ROLAND MAHIAI, VINONA MAHIAI, and JOE REICH, Appellants-Appellants, *v.* JACK K. SUWA, in his official capacity as Chairman of the Board of Agriculture, Hawaii Department of Agriculture; and CALVIN W. S. LUM, in his official capacity as State Veterinarian and Director of the Division of Animal Industry, Hawaii Department of Agriculture, Appellees-Appellees

(CIVIL NO. 86-2896)

AND

PATRICK E. APO, WILLIAM K. BUCHANAN, JR., RUSSELL DECOITE, JANE DECOITE, DANIEL A. KEKAHUNA, SR., FRANK F. KEOHO, SR., CHARLES MEYER, WAYNE MEYER, CHARLES B. MIGUEL, SR., CHARLES MIGUEL, SOLOMON NAEOLE, EDMUND S. PEDRO, LAWRENCE K. PUAILIHAU, SR., ELDON K. SPROAT and MARLENE K. SPROAT, Appellants-Appellants *v.* JACK K. SUWA, in his official capacity as Chairman of the Board of Agriculture, Hawaii Department of Agriculture; and CALVIN W. S. LUM, in his official capacity as State Veterinarian and Director of the Division of Animal Industry, Hawaii Department of Agriculture, Appellees-Appellees

(CIVIL NO. 86-2936)

AND

MARIA HUSTACE, Appellant-Appellant, *v.* JACK K. SUWA, in his official capacity as Chairman of the Board or Agriculture; and CALVIN W. S. LUM, in his official capacity as State Veterinarian and Director of the Division of Animal Industry, Hawaii Department of Agriculture, Appellees-Appellees

(CIVIL NO. 86-2937)

NO. 11662

350

SEPTEMBER 9, 1987

LUM, C.J., NAKAMURA, PADGETT, AND HAYASHI, JJ., AND
INTERMEDIATE COURT OF APPEALS CHIEF JUDGE BURNS
IN PLACE OF WAKATSUKI, J., RECUSED

OPINION OF THE COURT BY LUM, C.J.

This is an appeal from the circuit court judgment affirming the decision of the Hawaii Board of Agriculture ("Board") requiring the slaughter of all cattle on the island of Molokai and imposing a two-year moratorium on ranching operations. Appellants-Appellants Roland Mahiai, et al. (collectively "Ranchers") contend: 1) the Board lacked authority to implement the program; 2) the hearing officer improperly imposed the burden of proof upon Ranchers; and 3) the Board's action violated Ranchers' equal pro-

tection rights. Appellees-Appellees Jack K. Suwa, Chairman of the Board of Agriculture, and Calvin W. S. Lum, State Veterinarian and Director of the Division of Animal Industry, assert that all of the issues raised on appeal are moot because the cattle have been destroyed. We find merit in none of these contentions and affirm the judgment below.

## I.

### A.

The record reveals the following uncontested facts concerning the nature of bovine tuberculosis and the bacterium which causes it. Bovine tuberculosis is caused by *mycobacterium bovis ("m. bovis")*, a minute organism capable of floating in the air for indefinite periods. *M. bovis* can remain dormant and undetected for years in the tissues of an exposed animal, and later become active in the animal or its offspring. The bacterium is capable of surviving up to eight months in the outside environment.

Exposure to bovine tuberculosis occurs in a number of ways: by ingestion of *m. bovis,* by contamination of open wounds or breaks in the skin, or by placental transmission, or by inhalation ("aerosol transmission"). Thus, the disease can be transmitted without direct physical contact between animals.

Cattle are the primary host of *m. bovis.* The disease has existed in cattle on all of the major Hawaiian islands since at least 1933. At the time of the proceedings below, the entire island of Molokai had been quarantined since 1975, and cattle were exported by permit only.[1] The rate of positive reactors to the tuberculin test in Molokai cattle was 6.6% in 1985, compared to the national rate of .02% for the same year.

### B.

On September 6, 1985, the Hawaii Department of Agriculture ("Department") informed all cattle ranchers on Molokai that it had

---

[1] Domestic cattle on all other major islands in the Hawaiian chain by this time had been declared free of bovine tuberculosis.

obtained funds from the United States Department of Agriculture ("USDA") for the slaughter of all cattle on the island in an effort to eradicate bovine tuberculosis. The Department expressed its intention to "begin immediately to identify and appraise all cattle on Molokai" and "to accomplish the depopulation within the next six months."

Ranchers filed suit in United States District Court and obtained a preliminary injunction halting the program. However, they subsequently dismissed the action when the Department agreed to hold administrative hearings.

Following twenty-one days of extensive hearings, the hearing officer on June 30, 1986 issued a forty-page document outlining proposed findings of fact and conclusions of law. The hearing officer found that the Department had "presented evidence which showed that each owner's herd had been exposed to cattle infected with bovine tuberculosis," and concluded that, "from an epidemiological standpoint, all domestic cattle on the Island are exposed and an analysis of the contacts of each of the rancher-owners shows some degree of exposure." The hearing officer recommended that the Board proceed with the program. Both parties filed exceptions to the hearing officer's recommended decision.

After reviewing the record and hearing argument by counsel, the Board adopted virtually all of the hearing officer's proposed findings and conclusions. In its Final Decision and Order, the Board concluded that all cattle on the island of Molokai had been exposed to bovine tuberculosis, that the extermination of the cattle was "necessary to prevent the spread of the disease," and that a two-year ranching moratorium was "necessary to disinfect the premises where the disease may have existed and to prevent the spread of the disease." It ordered immediate compliance with the terms and conditions of the eradication program.

The eradication program ordered by the Board was composed of two phases. First, the cattle were appraised and slaughtered, and the owners received indemnity payments from the USDA. Second, all ranching operations were suspended for a two-year period following the slaughter. The wild animals in the exotic animal park located on Molokai Ranch were exempted from the program on the condition that the ranch construct a double fence to prevent contact with domestic animals.

Ranchers filed appeals in circuit court. Following argument by counsel, the court affirmed the Board's decision. The court subsequently denied Ranchers' request for a stay of execution pending this appeal. At present, all of the cattle on Molokai have been slaughtered and the two-year ban on ranching remains in effect.

## II.

By asking this court "to strike down the Board of Agriculture's Decision so they may resume ranching on Molokai immediately," Ranchers have assumed the "heavy burden of making a convincing showing that [the decision] is invalid." *In re Hawaiian Electric Light Co.*, 60 Haw. 625, 630, 594 P.2d 612, 617 (1979). Ranchers vigorously challenge the statutory authorization and practical necessity for the slaughter. However, they have not challenged 1) the factual findings or lack of them, concerning the necessity of the two-year moratorium following the slaughter, 2) the adequacy of federal indemnity payments for the slaughtered herds, 3) the compensation, or lack of it, for the moratorium period, or 4) the Board's apparent failure to promulgate rules and regulations in accordance with the plenary power vested in it by the legislature pursuant to Hawaii Revised Statutes ("HRS") § 142-6.

Because of Ranchers' evident acquiescence to these matters, we hold that they have waived or abandoned any challenge to them. *Bambico v. Perez*, 2 Haw. App. 298, 300, 631 P.2d 592, 594 (1981). *See also Quality Furniture, Inc. v. Hay*, 61 Haw. 89, 92 n.4, 595 P.2d 1066, 1068 n.4 (1979). We turn now to the allegations of error which are properly before us.

## III.

Appellees ask us to dismiss this appeal as moot because the cattle have already been slaughtered. But we believe Ranchers' appeal retains vitality.

"The [mootness] doctrine [is] appropriate where events subsequent to the judgment of the trial court have so affected the relations between the parties that the two conditions for justiciability relevant on appeal — adverse interest and effective remedy — have been compromised." *Wong v. Board of Regents*, 62 Haw. 391,

394, 616 P.2d 201, 203-04 (1980). "A case is moot if it has 'lost its character as a present, live controversy of the kind that must exist if [courts] are to avoid advisory opinions on abstract propositions of law.' " *Kona Old Hawaiian Trails Group v. Lyman,* 69 Haw. ____, ____, 734 P.2d 161, 165 (1987) (brackets in original) (quoting *Hall v. Beals,* 396 U.S. 45, 48 (1969) ).

We are mindful that "[t]he duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Wong v. Board of Regents,* 62 Haw. at 394-95, 616 P.2d at 204. "[H]istorically the objection to deciding moot cases was that the judgment of the court could not be carried into effect, or that relief was impossible to grant." *Id.* at 395, 616 P.2d at 204.

But these principles do not preclude our consideration of the issues raised here. The court below affirmed the Board's decision to implement a "bovine tuberculosis eradication program" which entailed mandatory herd depopulation *and* a two-year suspension of ranching operations following the slaughter.[2] Ranchers' purpose in asserting this appeal is to obtain a ruling from this court nullifying the entire eradication program.

---

[2] The terms of the program were set out in the following form letter sent to all Molokai cattle owners:

Under the authority granted in Section 142-6 of the Hawaii Revised Statutes and/or Section 4-16-20 of the Administrative Rules of the Division of Animal Industry, the premises, animals and effects located on Molokai, owned by you or under your control, are by this notice declared to be under quarantine for tuberculosis. Under this quarantine order, you are to depopulate your herd of cattle within 30 days of receipt of this notice.

In compliance with the terms of the bovine tuberculosis eradication program on Molokai you are further advised that:

. . . .

4. You will keep your premises vacant of cattle and other bovine tuberculosis susceptible animals for a period of at least 1 year following the removal of all animals involved in the depopulation.

5. You will stock the premises with only yearling cattle for a period of 1 year following the 1 year period of vacancy.

6. You will have all of these yearling cattle slaughtered and evaluated for bovine tuberculosis prior to restocking with breeding animals.

The first component of the program, depopulation, has been completed. Thus the issues concerning the propriety of the slaughter do not represent a present, live controversy. However, we choose to address the questions posed here because they are of great public import and it is as likely as not that similar questions arising in the future would become moot before an authoritative determination by an appellate court could be made. *See Kona Old Hawaiian Trails,* 69 Haw. at ____, 734 P.2d at 165-66; *Wong,* 62 Haw. at 395, 616 P.2d at 204.

Moreover, Ranchers presently are prohibited from resuming normal ranching operations. As long as this element of the program authorized by the lower court's ruling remains in effect, "the appeal presents an adversity of interests and possibly affords the appellant[s] an effective remedy." *Kona Old Hawaiian Trails,* 69 Haw. at ____, 734 P.2d at 165. Having found the mootness doctrine inapplicable, we proceed to the merits of the appeal.

IV.

Ranchers assert: 1) HRS § 142-6 does not apply in this case because it was superseded by HRS §§ 142-18; and 2) even if HRS § 142-6 is applicable in the present circumstances, the Board lacked authority to order the slaughter because the cattle were not *known* to be exposed to bovine tuberculosis within the meaning of HRS § 142-6. We reject both assertions.

A.

Ranchers contend the general powers conferred upon the Department pursuant to HRS § 142-6 were superseded by the more specific terms of HRS § 142-18 mandating the slaughter of cattle which react positively to the tuberculin test. A plain reading of the relevant statutory provisions defeats this assertion.

We are mindful of the principle of statutory construction that where there is a "plainly irreconcilable" conflict between a general and a specific statute concerning the same subject matter, the specific will be favored. *State v. Spencer,* 68 Haw. ____, ____, 725 P.2d 799, 800 (1986); *State v. Kuuku,* 61 Haw. 79, 82, 595 P.2d 291, 294 (1979). However, where the statutes simply overlap in their appli-

cation, effect will be given to both if possible, as repeal by implication is disfavored. *Spencer*, 68 Haw. at ___, 725 P.2d at 800; *Kuuku*, 61 Haw. at 82, 595 P.2d at 294.

While §§ 142-6 and 142-18 overlap to the extent that they discuss procedures concerning diseased animals, we discern no "plainly irreconcilable" conflict. Rather, the cited statutes are complementary.

Section 142-6 grants to the Department broad authority to destroy any domestic animals known to be infected or exposed to any communicable disease.[3] Section 142-18 is a procedural statute addressed to cattle owners. It requires them to deliver for slaughter all cattle which have reacted positively to the tuberculin test.[4] Nothing in section 142-18 evinces legislative intent to divest the Department of its section 142-6 power to destroy cattle known to be exposed to communicable disease.

## B.

Ranchers contend in the alternative, even assuming HRS § 142-6 is applicable under the present circumstances, the Department failed to establish that their cattle were *known* to be exposed to bovine tuberculosis. The record belies this contention.

As we have previously noted, HRS § 142-6 empowers the Department to quarantine and destroy domestic animals solely on the basis of exposure to any communicable disease. In addition, Administrative Rule § 4-16-20(b) of the Department of Agriculture, Division of Animal Industry provides that "[a]ll herds of cattle that have been in contact with herds in which tuberculin test reactors of

---

[3] HRS § 142-6 (1985) reads in part: "The department of agriculture may quarantine any domestic animal known to be affected with or to have been exposed to any contagious, infectious or communicable disease, and destroy the same, when in the opinion of the department, such measure is necessary to prevent the spread of the disease[.]"

[4] HRS § 142-18 (1985) reads: *The owner of all cattle reacting to the tuberculin test shall,* subject to section 142-16, *cause them to be* segregated immediately and, within a reasonable time thereafter, to be *delivered for slaughter* at such time and place as may be designated by the department of agriculture. The slaughter shall be under the direct supervision of the department and in accordance with the meat inspection regulations of the Federal Bureau of Animal Industry. (Emphasis added).

tuberculous animals have been found shall be designated as exposed herds and shall be quarantined." Subsection (c) of the rule requires owners of exposed cattle to "lift the quarantine through either complete herd depopulation via slaughter or through testing procedures, as prescribed by the state veterinarian."

We reject Ranchers' threshold argument that the term "contact" as it is used in Rule § 4-16-20 must be defined as "actual physical contact." The general principles of construction which apply to statutes also apply to administrative rules. *IBEW, Local 1357 v. Hawaiian Telephone Co.,* 68 Haw. \_\_\_\_, \_\_\_\_, 713 P.2d 943, 950 (1986). Our primary objective in interpreting and applying the relevant administrative rule is to ascertain and effectuate the intent of the Department. *See Stop H-3 Ass'n v. State Department of Transportation,* 68 Haw. \_\_\_\_, \_\_\_\_, 706 P.2d 446, 451 (1985) (interpreting statute). The obvious purpose of the rule is to facilitate the eradication of bovine tuberculosis. The record conclusively establishes that exposure to bovine tuberculosis can be accomplished indirectly, for example, by aerosol transmission. To accord the term "contact" the limited meaning urged by Ranchers would lead to an absurd result. This we may not permit. *See State v. Lee,* 67 Haw. 307, 314, 686 P.2d 816, 820 (1984).

We turn next to Ranchers' contention that the record fails to support the Board's determination that all of the cattle on Molokai were known to be exposed to bovine tuberculosis. The Board found that the Department "presented evidence which showed that each owner's herd had been exposed to cattle infected with bovine tuberculosis." A reviewing court will not disturb an agency's findings of fact unless they are shown to be "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." *Dedman v. Board of Land and Natural Resources,* 69 Haw. \_\_\_\_, \_\_\_\_, 740 P.2d 28, 35 (1987) (quoting HRS § 91-14(g)(5) (1985) ).

The record in this case overwhelmingly supports the finding of known exposure. The Board catalogued numerous types of contact establishing exposure generally,[5] and documented in a detailed

---

[5] Among the types of contact were: acquiring cattle from another Molokai owner who had infected cattle or positive reactors to the tuberculin test in his herd; use of a breeding bull from an exposed herd; pasturing cattle with another herd in which

exhibit the basis for its determination that each individual rancher's herd had been exposed to the disease.

"[C]ourts decline to consider the weight of the evidence to ascertain whether it weighs in favor of the administrative findings, or to review the agency's findings of fact by passing upon the credibility of witnesses or conflicts in testimony, especially the findings of an expert agency dealing with a specialized field." *In re Kaanapali Water Corp.*, 5 Haw. App. 71, 78, 678 P.2d 584, 589 (1984) (citations omitted). Because they are supported by reliable, probative and substantial evidence, the Board's factual findings must be upheld. *See Dedman*, 69 Haw. at ____, 740 P.2d at 35.

## V.

Ranchers contend the hearing officer improperly required Ranchers, rather than the Department, to bear the burden of proof.[6] But nothing in the record indicates that the hearing officer did in fact place the burden upon Ranchers except the hearing officer's explicit statement that "none of the rulings have rested upon the failure of the rancher-owners to meet a burden of proof." We are constrained to reverse or modify an agency's decision only where "substantial rights of the petitioners may have been prejudiced." HRS § 91-14(g) (1985). We find that the error, if any, was harmless in this case. *See In re Wind Power Pacific Investors-III*, 67 Haw. 342, 343, 686 P.2d 831, 832-33 (1984) (agency's procedural irregularities did not prejudice appellant's substantial rights).

## VI.

Finally, we consider Rancher's equal protection claim. As we have said, HRS § 142-6 grants to the Department the discretion to

infected animals or positive reactors had been found; having feral cattle in contact with the herd; use of the same pens and squeeze chutes used by an exposed herd over a matter of days.

[6] HRS § 91-10 (1985) reads in part: "In contested cases . . . (5) Except as otherwise provided by law, the party initiating the proceeding shall have the burden of proof, including the burden of producing evidence as well as the burden of persuasion. The degree or quantum of proof shall be a preponderance of the evidence."

quarantine and destroy animals and to disinfect the premises.[7] Ranchers do not challenge the statute itself on equal protection grounds. Rather, they claim to be the victims of impermissible selective treatment by the Board. Ranchers argue that the Board's decision to limit the depopulation program to cattle and to exempt captive wildlife violates equal protection principles. We disagree.[8]

The essence of the equal protection guarantee embodied in the federal and state constitutions is that "all persons similarly circumstanced shall be treated alike."[9] *Shibuya v. Architects Hawaii, Ltd.,* 65 Haw. 26, 35, 647 P.2d 276, 283 (1982) (quoting *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415 (1920) ). *See also State v. Bloss,* 62 Haw. 147, 157, 613 P.2d 354, 360 (1980). A law, neutral on its face, but so administered as to unjustly discriminate between persons in similar circumstances, may deny equal protection. *Yick Wo. v. Hopkins,* 118 U.S. 356 (1886).

In *State v. Kailua Auto Wreckers, Inc.,* 62 Haw. 222, 615 P.2d 730 (1980), we recognized the defense of discriminatory enforcement in the context of a criminal prosecution. There we stated:

The burden of proving discriminatory enforcement of the law rests upon the party raising the defense. That party must present sufficient evidence to establish the existence of intentional or purposeful discrimination, that is "deliberately based upon an unjustifiable standard such as race, religion or other arbitrary classification." It is insufficient to show merely that

---

[7] HRS § 142-6 provides in part: "The department of agriculture may quarantine any domestic animal known to be affected with or to have been exposed to any . . . communicable disease, and destroy the same, *when in the opinion of the department, such measure is necessary* to prevent the spread of the disease, . . . and disinfect premises where the disease may have existed." (Emphasis added).

[8] We do not decide whether HRS § 142-6, which speaks in terms of "domestic" animals, empowers the Board to destroy captive wildlife.

[9] Article I, section 5 of the Hawaii constitution provides: "No person shall be deprived of life, liberty or property without due process of law, nor be denied the equal protection of the laws, nor be denied the enjoyment of the person's civil rights or be discriminated against in the exercise thereof because of race, religion, sex or ancestry."
The fourteenth amendment of the United States Constitution reads in part: "[N]or shall any State deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

other offenders have not been prosecuted, or that there has been laxity of enforcement, or that there has been some conscious selectivity in prosecution. Recognition of the defense will not permit the guilty to go free simply by showing that other violators exist.

*Id.* at 226-27, 615 P.2d at 734-35 (quoting *Oyler v. Boles,* 368 U.S. 448, 456 (1962) (citations omitted). *See also State v. Tookes,* 67 Haw. 608, 615, 699 P.2d 983, 988 (1985).[10] Although the case at bar does not involve a criminal prosecution, we find the case law pertaining to allegations of discriminatory prosecution instructive. *See Henson v. Department of Law Enforcement,* 107 Idaho 19, 23 n.3, 684 P.2d 996, 1000 n.3 (1984) (allegation of selective enforcement in revocation of retail liquor license).

To substantiate a claim of discriminatory enforcement, Ranchers must satisfy a two-part test. First, they must demonstrate that the Department generally has not enforced section 142-6 against others similarly situated. *See Kuzinich v. County of Santa Clara,* 689 F.2d 1345, 1349 (9th Cir. 1982). Second, Ranchers must establish that their selection was "deliberately based upon an unjustifiable standard such as race, religion or other arbitrary classification." *State v. Kailua Auto Wreckers, Inc.,* 62 Haw. at 227, 615 P.2d at 734-35 (quoting *Oyler v. Boles,* 368 U.S. at 456). If Ranchers do not satisfy both parts of this test, their equal protection claim fails. For that reason, the claim fails here.

Molokai Ranch, in addition to operating a cattle ranch, owns and operates the exotic animal park located on its property. We note at the outset that all *cattle* owners were treated alike; although the park animals were exempted from the depopulation program, cattle belonging to Molokai Ranch were included in the program.

By sparing park wildlife from the eradication program, the Board clearly treated cattle owners and park owners differently. However, Ranchers have failed to satisfy the threshold requirement of demonstrating that cattle owners and park owners are "similarly circumstanced." Rather, the evidence underscores the dissimilarity between the two groups.

---

[10] The Supreme Court has accorded a similar interpretation to the United States Constitution. *Oyler v. Boles,* 368 U.S. at 456 ("the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation").

As previously noted, cattle are the primary host of *m. bovis.* Numerous cattle husbandry practices contributed to the transmission of bovine tuberculosis throughout the Molokai cattle population. Among them were: common use of contaminated equipment; use of a common import/export pen at the sole dock facility on the island; interbreeding among herds; and pasturing cattle of different owners in a single herd. These practices obviously were not utilized in the operation of the animal park. Prior to entering the state, park wildlife was thoroughly tested for disease, including bovine tuberculosis. The park is required to augment the existing ten-foot barrier by constructing a double fence.

We find the remaining assertions of error without merit. The judgment of the lower court is affirmed.

*Karen M. Holt,* Legal Aid Society of Hawaii, for Appellants-Appellants Mahiai, et al. (*Yola M. Forbes* with her on the briefs, for Appellants-Appellants Apo, et al.)

*Robert M. Harris* for Appellant-Appellant Hustace.

*David Waters,* Deputy Attorney General, for Appellees-Appellees Suwa, et al.