GAIL WILLIAMS and LORI WAIALAE, Appellants–
Appellees, v. HAWAII MEDICAL SERVICE ASSOCIA-
TION, a Hawaii corporation, Appellee–Appellant, and
RICHARD Y. WADA, in his capacity as Referee; and
MARIO R. RAMIL, in his capacity as Director of Labor and
Industrial Relations, State of Hawaii, Appellees

NO. 14248

(CIV. NO. 88–1672–06)

SEPTEMBER 21, 1990

LUM, C.J., PADGETT, HAYASHI, AND
WAKATSUKI, JJ., AND INTERMEDIATE
COURT OF APPEALS JUDGE HEEN,
IN PLACE OF MOON, J., RECUSED

OPINION OF THE COURT BY WAKATSUKI, J.

I.

Gail Williams and Lori Waialae had been employed as full–time flight attendants by Mid–Pacific Airlines (Mid–Pacific). Pursuant to the Prepaid Health Care Act, Chapter 393, Hawaii Revised Statutes (HRS), Mid–Pacific had contracted for employee group health insurance coverage with Hawaii Medical Service Association (HMSA). Under the prepaid health care plan offered to its employees, Mid–Pacific paid 100% of the premiums. These premiums were paid up through October 31, 1987. Beset by financial problems, Mid–Pacific failed to make premium payments thereafter.

In January, 1988 Mid–Pacific filed a petition in bankruptcy. Williams' and Waialae's employment with Mid–Pacific was terminated at about the same time.

On February 3, 1988, HMSA notified Williams and Waialae that since premiums had not been paid by Mid–Pacific from November 1, 1987, health care coverage had lapsed as of that date. However, HMSA offered to provide coverage to Williams and Waialae for the period between November 1, 1987 and February 29, 1988, if Williams and Waialae each paid individual premiums of $178.28 for that period. Both employees elected to pay the premiums since they had incurred medical bills of more than $178.28 during that period. HMSA thereafter paid their medical bills.

Williams and Waialae, however, questioned their obligations to make the premium payments. They sought review by the Department of Labor and Industrial Relations (DLIR), and requested reimbursement of the premiums they had paid to HMSA. The case was submitted to a referee. The referee found that HMSA did not comply with the administrative rule governing cancellation of insurance coverage. Regardless, the referee held that HMSA had no obligation to continue coverage if premiums were not paid. Therefore, if Williams and Waialae desired coverage after October 31, 1987, they had to pay the premiums. The request for reimbursement was denied.

Williams and Waialae filed a notice of appeal to the circuit court from the referee's decision. DLIR agreed with Williams and Waialae, and disagreed with the referee's decision. In the circuit court appeal, DLIR took the lead role in advancing the position taken by Williams and Waialae through briefing and argument. Williams and Waialae merely filed documents expressing concurrence with DLIR.

The circuit court, acting as an appellate body, disagreed with the referee's ruling. The court ruled that coverage was still in effect and that Williams and Waialae were not required to make individual premium payments. HMSA was ordered to reimburse to Williams and Waialae the premiums they had paid. HMSA appeals. We affirm.

## II.

HMSA contends that the circuit court should have dismissed the appeal of the referee's decision. We disagree.

The Administrative Procedures Act, Chapter 91, HRS, does not give administrative agencies such as DLIR the right to take an appeal from an administrative action. HRS § 91–1, § 91–14 (1985); *In re Eric G.*, 65 Haw. 219, 224, 649 P.2d 1140, 1143 (1982). But here, DLIR was made a party to the appeal as the appellee in the circuit court by Williams and Waialac, the appellants. Furthermore, there is nothing in our statutes that precludes DLIR from supporting the position of the appellants. HMSA complains that in this case DLIR did more than support the employees' position. HMSA contends that DLIR was the "true" appellant and that Williams and Waialac were merely "straw persons."

Williams and Waialac, being aggrieved persons, indisputably had a stake in the outcome of the appeal. They were each seeking reimbursement of $178.28. Although that amount may seem *de minimus* to HMSA, it is not insubstantial to an individual who has just been terminated from employment. When DLIR took the lead role in the appeal before the circuit court, Williams' and Waialae's stake in the outcome of the appeal was not lessened, nor were they converted into "straw persons."

## III.

Administrative Rule § 12–12–28 provides:

§ 12–12–28 Cancellation of contract. (a) No health care contractor shall cancel a contract providing in whole or in part for health care benefits required by the statute prior to the expiration date of the contract unless written notice of intention to cancel on a specified date and reason therefor has been filed with and served on the

employer and the director at least ten days prior to the specified cancellation date.

(b) The ten days' advance notice requirement in subsection (a) need not be complied with when a new contractor is simultaneously substituted. In the event of substitution, the previous contractor shall immediately file with and serve on the employer and the director, notice that the contract was cancelled, the specific date and the reason for cancellation.

(c) If a plan provides by its terms for an expiration date, acceptance of the plan by the director is notice thereof.

(d) The employer shall notify its covered employees of the cancellation of coverage for nonpayment of premium. The employees shall be given an option of individual coverage if premium payment is made within ten days directly to the contractor.

HMSA admits that it failed to comply with the notification requirements of subsection (a), and therefore, concedes that the contract to provide health care was still in effect. HMSA, however, points to provisions in the contract with Mid–Pacific which require payment of premiums before HMSA becomes liable to pay any benefits. Notwithstanding noncompliance with subsection (a), HMSA argues that it had no obligation under the contract until the employees individually made payments when Mid–Pacific defaulted.

HMSA's contention would render subsection (a) ineffective and superfluous. As aptly illustrated by this case, there will be little incentive for HMSA to comply with the notification requirements of subsection (a) since it incurs no liabilities while premiums are not being paid.

In construing an administrative rule, general rules of statutory construction are applicable. *Mahiai v. Suwa*, 69 Haw. 350, 358,

742 P.2d 359, 366 (1987). When a rule does not conflict with statutory and constitutional requirements, courts will ascertain and effectuate the intent of the agency which promulgated the rule. *Life of the Land, Inc. v. West Beach Dev. Corp.*, 63 Haw. 529, 531, 631 P.2d 588, 590 (1981); *Mahiai*, 69 Haw. at 358, 742 P.2d at 366. "Courts strive to give meaning to all parts of an administrative rule and to avoid construing any part as superfluous." *International Bhd. of Elec. Workers v. Hawaiian Tel. Co.*, 68 Haw. 316, 325, 713 P.2d 943, 951 (1986). Courts will not construe rules in a manner which produces an absurd result. *Mahiai*, 69 Haw. at 358, 742 P.2d at 367.

Reading § 12–12–28 in its entirety, it is clear that notification of cancellation is for the benefit of the employee. For example, ten–day advance notification is unnecessary when a new contractor is simultaneously substituted (subsection (b)) because there is no hiatus in coverage for the employee. Further, the ten–day period gives the employee the opportunity to select the option of individual coverage under the same contractor (subsection (c)) or of obtaining coverage from another health insurance provider.

In this case, Williams and Waialae were left without options. By the time they were notified that coverage had lapsed, they had already incurred uncovered medical bills. Another insurer would not have provided insurance coverage for health care services incurred by Williams and Waialae prior to the time insurance was bought. Williams and Waialae had no choice but to accept HMSA's offer to provide coverage upon individual payment of premium.

## IV.

We agree with the conclusion reached by the circuit court. It is obvious that legislative intent was to ensure continuous medical insurance coverage for employees. *See* HRS § 393–2 (1985). The

decision reached by the circuit court is not an unjust result. HMSA is not required to provide coverage gratis, but HMSA must look to the employer for payment and not the individual employees. As between HMSA and the individual employee, HMSA is in a far better position to pursue payment from the employer. Furthermore, HMSA could have easily avoided this situation by complying with the notification requirement of subsection (a).

Affirmed.

*Cuyler Shaw* (*Charles A. Price* with him on the briefs of Ashford & Wriston) for Appellee–Appellant Hawaii Medical Service Association.

*Wayne A. Matsuura*, Deputy Attorney General, for Appellees, Director of Labor and Industrial Relations.