LARRY T. TOPLISS, d.b.a. PACIFIC LAND COMPANY, Petitioner–Appellant, v. THE PLANNING COMMISSION and THE PLANNING DEPARTMENT OF THE COUNTY OF HAWAI'I, Respondents–Appellees

NO. 15586

(CIV. NO. 91–75K)

JANUARY 6, 1993

BURNS, C.J., HEEN, AND WATANABE, JJ.

378

OPINION OF THE COURT BY HEEN, J.

On April 30, 1990, Petitioner–Appellant Larry T. Topliss, dba Pacific Land Company (Petitioner), filed a petition (Permit Petition) with Appellee Planning Commission of the County of Hawai'i (Commission) for a Special Management Area (SMA) permit (SMAP) pursuant to the Coastal Zone Management Act (CZMA), Hawai'i Revised Statutes (HRS) chapter 205A (1985 and Supp. 1991), to develop two multi–story office buildings on his property (property) in Kailua–Kona.

The property lies on the northern corner of the intersection of Kuakini Highway and Seaview Circle. Kuakini Highway has an 80–foot right–of–way with a 24–foot pavement, while Seaview Circle has a 60–foot right–of–way with a 20–foot pavement. The Permit Petition acknowledges that the property "lies on a vital intersection and is adjacent to a high–traffic highway." The Permit Petition also describes the intersection as "a high–traffic intersection."

The property consists of two adjacent lots within the 143–lot Kona Sea View Lots Subdivision, most of which are in single family residential use.[1] However, some of the lots at the intersection and along Kuakini Highway are either vacant or in multi–family use. The two lots making up the property will be consolidated to effect the development. The State Land Use District classification for the property is Urban, and the County of Hawai'i's General Plan Land Use Pattern Allocation Guide designates the property as Medium Density Urban. The commercial zoning classification for the property allows the proposed use.

Besides the property, six lots zoned for commercial and four zoned for residential use remain undeveloped within the subdivision. An 18–story residential condominium building occupies the adjoining lot to the north of the property. A 7–Eleven store, restaurant, and offices are situated across Kuakini Highway from the property. Four vacant lots across Sea View Circle to the south of the property are zoned for commercial use. The Commission granted two SMAPs each in 1980 and 1990 in the vicinity of the property.

The property has an area of approximately one–half acre and is nearly 400 feet above sea level and about 3600 feet from the shoreline. The property is rather severely sloped away from Kuakini Highway with a grade of approximately 20%. The differ-

---

[1] The two lots have areas of 15,001 and 7,502 square feet..

ence in elevation between the property's mauka and makai boundaries is approximately 40 feet. The roof line of the proposed building abutting Kuakini Highway would extend approximately six feet above the elevation of the property's boundary. Between the property and the coastline lies most of the Kona Sea View Lots Subdivision, a "non–transgressable thicket," hotels and apartments along Alii Drive, and Alii Drive itself, which is the paved county roadway closest to and paralleling the coastline. Two circuitous vehicular routes measuring 2.7 miles in the southerly direction and 1.5 miles in the northerly direction are the only accesses to the coastline.

The property came within the purview of the CZMA in 1980 when the Commission designated all of the area makai of Kuakini Highway from Kailua southward to Keauhou as an SMA. At that time, the Commission cited "anticipated development pressures" in the area, the steep topography, soil composition, the Hawai'i County General Plan designation of "the entire Kuakini right of way . . . as an important scenic resource," and the need to "better coordinate the overall development of the area" as the grounds for its action.

The Commission denied the Permit Petition and Petitioner appealed to the third circuit court. By stipulation of the parties, the matter was remanded to the Commission for the entry of findings of fact (FOF) and conclusions of law (COL). Meanwhile, on September 4, 1990, Petitioner filed a petition with the Commission to amend the boundaries (Boundary Petition) of the SMA to exclude his property.

The Boundary Petition was heard by the Commission on January 31, 1991. At the same hearing, the Commission denied Petitioner's request to reconsider the denial of the Permit Petition. On February 21, 1991, the Commission entered separate FOF, COL, and Orders denying both Petitions.

Petitioner appealed both orders to the third circuit court and on September 5, 1991, that court entered an order affirming the Commission. The matter is here on Petitioner's appeal from the circuit court's order.

Our review of an administrative agency's decision is governed by the standards set forth in HRS § 91–14(g) (1985).[2] *Williams v. Hawai'i Hous. Auth.*, 5 Haw. App. 325, 690 P.2d 285 (1984), *cert denied* 67 Haw. 686, 744 P.2d 782 (1984). Under HRS 91–14(g), an administrative agency's findings of fact are reviewable for clear error, while its conclusions of law are freely reviewable. *Medeiros v. Hawai'i County Planning Comm'n*, 8 Haw. App. 183, 797 P.2d 59 (1990). An administrative agency's findings of fact will not be set aside on appeal unless they are shown to be clearly erroneous in view of the reliable, probative and substantial evidence on the whole record or the appellate court, upon a thorough examination of the record, is left with a definite and firm conviction that a mistake has been made. *Feliciano v. Board of Trustees*, 4 Haw. App. 26, 659 P.2d 77 (1983). As a general rule, an administrative agency's decision within its sphere of

---

[2] Hawai'i Revised Statutes (HRS) § 91–14(g) (1985) reads as follows:
**Judicial review of contested cases.**
\* \* \*
(g) Upon review of the record the court may affirm the decision of the agency or remand the case with instructions for further proceedings; or it may reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced because the administrative findings, conclusions, decisions, or orders are:

(1)  In violation of constitutional or statutory provisions; or

(2)  In excess of the statutory authority or jurisdiction of the agency; or

(3)  Made upon unlawful procedure; or

(4)  Affected by other error of law; or

(5)  Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(6)  Arbitrary, or capricious, or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

expertise is given a presumption of validity, *Aio v. Hamada*, 66 Haw. 401, 664 P.2d 727 (1983), and one who seeks to overturn the agency's decision bears the heavy burden of making a convincing showing that it is invalid because it is unjust and unreasonable in its consequences. *In re Hawai'i Elec. Light Co.*, 60 Haw. 625, 594 P.2d 612 (1979).

## I.

Although Petitioner does not challenge the validity of the CZMA, the thrust of his attack is that when the Commission denied his Petitions it violated the CZMA's clear objectives and purposes.[3] We disagree with respect to the Boundary Petition, but agree with respect to the Permit Petition.

The dispositive question is construction of the CZMA. Our duty in construing statutes is to ascertain and give effect to the legislature's intention and to implement that intention to the fullest degree. *State v. Briones*, 71 Haw. 86, 784 P.2d 860 (1989). Petitioner argues that the CZMA is simply a zoning statute which must, as a general rule, be strictly construed against further derogation of common–law property rights. The rule cited by Petitioner is inapplicable here, however, since the language of the CZMA is clear and unambiguous and the legislature's intent is beyond peradventure. *See Maui County v. Puamana Management Corp.*, 2 Haw. App. 352, 631 P.2d 1215 (1981).

The CZMA is "a comprehensive State regulatory scheme to protect the environment and resources of our shoreline areas." *Mahuiki v. Planning Comm'n*, 65 Haw. 506, 517, 654 P.2d 874, 881 (1982).

> The CZMA imposes special controls on the development of real property along the shoreline areas in order "to preserve, protect, and where possible, to restore the natural

---

[3] We reject Petitioner's arguments that the Commission's refusal to remove the property from the CZMA was "spot zoning" and amounted to a "taking."

resources of the coastal zone of Hawai'i." HRS § 205A–21.

*Sandy Beach Defense Fund v. City Council*, 70 Haw. 361, 365, 773 P.2d 250, 254 (1989).

When it enacted the CZMA, the Hawai'i legislature specifically found that "special controls on developments within an area along the shoreline are necessary to avoid permanent losses of valuable resources and the foreclosure of management options, and to ensure that adequate access, by dedication or other means, to public owned or used beaches, recreation areas, and natural reserves is provided." HRS § 205A–21 (1985). The legislature therefore declared it to be "the state policy to preserve, protect, and where possible, to restore the natural resources of the coastal zone of Hawai'i." *Id.* In order to carry out the CZMA's policies and objectives, the legislature authorized the counties to establish SMAs. HRS § 205A–23 (1985). Development within an SMA is controlled by a permit system administered by the counties pursuant to HRS § 205A–28 (1985).

## II.

## THE BOUNDARY PETITION

### A.

Petitioner argues that the Commission exceeded its lawful authority when it established Kuakini Highway as the mauka boundary of the SMA. He contends that the CZMA authorizes the Commission to include within the SMA lands that have a "direct and significant impact" on the coastal waters protected by the CZMA.[4] He asserts that in this case the property has "no potential for direct or substantial impact upon either the coastal water or the

---

[4] Petitioner claims that the following findings of fact do not support the Commission's conclusion that the property should not be removed from the SMA:

coastal resources to be protected" and should not be included within the SMA.[5] The argument is without merit.

Among the CZMA's stated objectives and policies are the protection, preservation, restoration and improvement of the "quality of coastal scenic and open space resources[,]" HRS § 205A–2(b)(3) and (c)(3)(C) (1985), and the "designing and locating" of new "developments to minimize the alteration of . . . existing public views to and along the shoreline[,]" HRS § 205A–2(c)(3)(B) (1985).[6]

In order to protect and preserve the coastal zone's scenic and open space resources, the CZMA requires the Commission to "minimize, where reasonable . . . [a]ny development which would substantially interfere with or detract from the line of sight toward

---

63. Upon mandatory review and update of the SMA maps, the [Planning] Department recommended that the SMA in the North Kona district should include the area along Alii Drive, bounded by Kailua, Keauhou and Kuakini Highway. The rationale for this expansion focused on the rapid growth experienced in the area and a need to ensure that development evaluates the physical constraints as well as the scenic viewplanes from Kuakini Highway, which has been identified as an important scenic resource in the General Plan.

68. It is important that the boundary line be retained at Kuakini Highway since viewplanes have been identified as an area of critical concern.

71. If the development of Property is found to have no significant adverse impacts on viewplanes or open space, this does not mean that the Property can be removed from the SMA.

[5] Any contraction of an SMA boundary is subject to review by State authorities for compliance with the objectives and policies of the CZMA. HRS § 205A–23 (1985).

[6] In a report of the United States Senate Commerce Committee on the Coastal Zone Management Act of 1972, S. Rep. No. 92–753, 92 Cong., 2d Sess. 3, *reprinted in* U.S. Code Cong. & Admin. News 4776 (1972), the committee suggested that a State coastal zone management program should include "both visual and physical" access "to the coastline and coastal areas[.]" *Id.* at 4786. Hawai'i's coastal management program arises from the federal enactment, and the above sections of the CZMA clearly are meant to be in accord with the Commerce Committee's suggestion.

the sea from the state highway nearest the coast[.]" HRS § 205A–26(3)(D) (1985).

The intent of the CZMA is clearly to authorize inclusion in the SMA of lands that have a significant impact on the scenic resources in the area and whose development would alter the public views to and along the shoreline. Protection of the coastal areas and waters from adverse environmental or ecological impact is only one of the CZMA's objectives. Another clear objective is protection against interference with or alteration of coastal scenic resources. Where a property or development has the potential for such interference, then it may be included within an SMA even though it is not in close proximity to the coastline.

Petitioner's arguments that (1) the Commission's "rapid growth" finding[7] is "factually incorrect" because the area surrounding the property "had already become substantially developed as early as 1977[,]" and (2) the property "is one of the very last parcels in the neighborhood which is yet to be developed[,]" is without merit.

First, the finding is merely a reiteration of the original finding made in 1980 when the SMA boundary was established at Kuakini Highway. There is nothing in the record to support Petitioner's argument that the area was already substantially developed at the time the finding was made. Moreover, whether the growth in the area was rapid or slow is really of no import. The aim of the CZMA is to control growth of whatever rapidity. *See Sandy Beach Defense Fund.*

Second, the fact that the property is among the last to be developed in the neighborhood does not vitiate the finding. The objective of controlling growth relates to the entire SMA not just the neighborhood in which the property is located.

---

[7] *See supra* note 4.

Since control of growth in the SMA is an objective of the CZMA, *id.*, it cannot be said, as Petitioner argues, that control of rapid growth is the Commission's attempt to use general planning and zoning objectives to justify imposition of the special controls of the CZMA.

### B.

Petitioner acknowledges that the CZMA expresses the legislature's concern for "views along the shoreline." However, he contends that the "scenic viewplanes" cited by the Commission in FOF No. 63 is purely a creation of the Commission and is not among the "state interests" advanced by the CZMA.[8] Consequently, the continued inclusion of the property in the SMA unconstitutionally deprived him of his property. The argument is without merit.

First, Petitioner misstates the language of the CZMA. HRS § 205A–2(c)(3)(B) clearly establishes the protection of views *to and along* the shoreline as among the legislature's policies regarding scenic and open space resources. [9]

---

[8] *See supra* note 4.

[9] HRS § 205A–2(c)(3)(B) (1985) reads as follows:
  **Coastal zone management program; objectives and policies.**

  * * *
  (c)  Policies.
  * * *
  (3)  Scenic and open space resources;
  * * *
      (B)  Insure that new developments are compatible with their visual environment by designing and locating such developments to minimize the alternation of natural landforms *and existing public views to and along the shoreline*[.]

(Emphasis added.)

Second, as stated above, HRS § 205A–26(3)(D) requires the Commission to minimize a development's interference with the line of sight from Kuakini Highway toward the sea.

In our view, the term scenic viewplanes employed in FOF No. 63 relating to the Boundary Petition is merely a paraphrase of the statutory terms "views to and along the shoreline" or "line of sight toward the sea," and clearly comports with the intent of the statute.

## C.

Petitioner also argues that since the shoreline itself, as defined in the CZMA,[10] cannot be seen from the property, the continued inclusion of the property in the SMA goes beyond the legislature's authorization to protect "views to and along the shoreline" and "shoreline open space and scenic resources." We disagree.

HRS § 205A–26(3)(D) clearly mandates the Commission to protect and preserve more than just the view of the shoreline. As noted above, the statute, by its very language, is intended to protect the view toward the sea even though the "shoreline" cannot be seen either because of intervening development or natural growth.

Petitioner also contends that even if "protecting panoramic coastal views" is within the legislative mandate, it is not a reasonable basis for imposing SMA regulations, since Hawai'i County may impose height and setback limitations under its zoning powers. However, the fact that the County can impose the same restrictions through the exercise of one power does not make the proper exercise of another specifically authorized power unreasonable.

---

[10]HRS § 205A–1 (Supp. 1991) defines shoreline as:

the upper reaches of the wash of the waves, other than storm and seismic waves, at high tide during the season of the year in which the highest wash of the waves occurs, usually evidenced by the edge of vegetation growth, or the upper limit of debris left by the wash of the waves.

## D.

Petitioner asserts that since there is no significant view of either the ocean or the shoreline from the portion of Kuakini Highway that abuts the property, the inclusion of the property in the SMA did not advance the State's interest in preserving the viewplane from the highway. We disagree.

Admittedly, Petitioner's evidence indicates that the view from the portion of Kuakini Highway abutting the property is limited. However, that does not affect the Commission's finding as to the significance of the total viewplane from the highway. If, in fact, Petitioner's development would not have a significant, adverse impact on the total viewplane, the Commission could consider that as favoring the development or could impose conditions on the development to minimize the impact. However, that would not necessarily support removal of the property from the SMA.

## E.

Petitioner argues that "[t]he original enactment of Hawai'i's CZMA in 1975 . . . defined the SMA to exclude 'portions of [lands in] which there are numerous residental commercial or other structures of a substantial nature in existence as of the effective date of [CZMA],'" and there is no indication that that exclusion should not be continued. The argument misstates the statute.

The original enactment excluded from SMAs only such built up areas that may be located on lands "which abut any *inland* waterway or body of water wholly or partially improved with walls[.]" Act 176, 1975 Haw. Sess. Laws § 1 (emphasis added). That is not the situation here and there is nothing to indicate the legislature intended to continue that exclusion or to expand it.

## III.

## THE PERMIT PETITION

In denying the Permit Petition, the Commission made the following FOF:

62. Rule 9–10(H)(5) says that one factor which should be considered in constituting a "significant adverse effect" is when the proposed use, activity or operation "involves substantial secondary impacts . . . such as effect on public facilities."

69. Based upon the evidence adduced, including that submitted with the Petition, the testimony of the public and the Petitioner, and the information contained in the [Planning] Department's Background Report, the Commission concluded that the Petitioner's proposed development would have cumulative and significant adverse effects and impact on the public roadway facilities and system in the area of said development, to wit:

    (A) Increased traffic congestion;

    (B) Decreased pedestrian safety, especially with a school bus stop in the vicinity;

    (C) Potential increase in vehicular accidents at the intersection of Kuakini Highway and Sea View Circle.[11]

(Footnote added.)

Petitioner challenges the quoted FOF as not being based on substantial evidence. We disagree. The record contains substan-

---

[11]Rule 9–11, which is the Commission's statement of the prerequisites for approving an SMAP application adopts a standard for assessing environmental and ecological effect that is different from HRS § 205–A–26(A) (1985). According to Rule 9–11.C.1., the Commission may not approve a proposed development within the SMA unless it first finds that the proposal will not have a

tial evidence showing that the development will impact on the roads in the vicinity of the Kuakini Highway–Sea View Circle intersection. Nevertheless, after a thorough review of the record, we have a definite and firm conviction that a mistake has been made.

Pursuant to HRS § 205A–26(2) (1985), development cannot be approved within an SMA unless findings are made that the development (A) will not have any substantial adverse environmental or ecological effect except, however, where the substantial adverse effect is practicably minimized and "clearly outweighed by public health, safety, or compelling public interests"; (B) is consistent with the objectives, policies, and SMA guidelines of the CZMA; and (C) is consistent with the county general plan and zoning. In our view, where a proposed development meets those statutory requisites, the Commission's denial of an SMAP would be in excess of its authority.

---

"*significant* adverse environmental or ecological effect[.]" (Emphasis added.) The CZMA, as indicated above, requires a finding of substantial adverse environmental or ecological effect. The question is whether the language of the Rule renders it in conflict with HRS § 205A–26(A).

Administrative rules may not enlarge, alter, or restrict the provisions of the statute being administered. *Jacober v. Sunn*, 6 Haw. App. 160, 715 P.2d 813 (1986). In construing administrative rules, courts will apply the general rules of statutory construction. *Williams v. Hawai'i Medical Serv. Ass'n*, 71 Haw. 545, 798 P.2d 442 (1990), *recon. denied* 71 Haw. 666, 833 P.2d 900 (1990). The courts' duty is to ascertain and effectuate the intent of the administrative agency, and the courts will not adopt an interpretation of the agency's rules that will lead to an absurd result. *Mahiai v. Suwa*, 69 Haw. 349, 742 P.2d 359 (1987). Additionally, administrative rules must be read so as to give them effect. *State v. Mun Chung Tom*, 69 Haw. 602, 752 P.2d 597 (1988).

The words significant and substantial have similar meanings, and are synonymous with the word meaningful. *Roget's International Thesaurus* (3d ed. 1962). In order to avoid an absurd result, we construe the term significant adverse environmental or ecological effect in Rule 9–11 to be synonymous with the CZMA's requirement.

The purpose of the CZMA is to control development within an SMA through the device of the SMAP, not to totally prevent or prohibit such activity. It follows that, where an administrative record indicates that a proposed development within an SMA would not contravene the statute's policies, objectives, and purposes, the Commission would exceed its authority by denying an SMAP that may have been requested for that project. The question, here, is whether the Commission's findings satisfied its duty and authority under the statute.

Here, the Commission in other FOF found that the development would have no significant impact on archaeological or historical sites, "floral" and "faunal" resources of the coastal area, or on the coastal waters.[12] The Commission made no finding regarding any impact on the viewplanes and open space.

The only reason given by the Commission for denying the permit, as noted in FOF 62 and 69, is that the development would have cumulative and significant adverse effects on the roadway system at the intersection in question. However, at oral argument in this court, the Commission's counsel conceded that the traffic generated by the development in this case would have very little, if any, impact on the coastal zone's environment or ecology.

---

[12] The Commission made the following pertinent findings of fact:

46. The project site has been previously altered and is unlikely to contain any surface archaeological sites of significance.

47. The Department of Land and Natural Resources commented "It is our understanding that the lots in this subdivision were graded some time ago, making it unlikely that significant historic sites are present. The project should have 'no effect' on such sites."

49. Because the land has been altered, it is not likely to be a habitat for any rare or endangered species of flora or fauna.

50. The project site is located approximately 3,600 feet from the shoreline.

51. The impact to coastal waters should be negligible.

Under the circumstances of this case, absent a finding that the impact on the public facilities would result in a substantial adverse environmental or ecological effect, or render the development inconsistent with the objectives, policies, and guidelines of the CZMA, the Commission's finding that the development would have significant adverse effects and impact on the existing highway system in the area of the development does not provide a sufficient basis for denying the Permit Petition. In other words, if traffic from a development within an SMA is not shown to have a substantial adverse effect on the coastal environment, such impact as the traffic may otherwise have on the existing roadway system in the area of the development cannot be the basis for denying an SMAP application.

Additionally, even if the development in this case is shown to have a substantial adverse effect in accordance with the statute, the Commission was required under HRS 205A–26(2)(A) to determine whether that effect could be practicably minimized and, when minimized, whether the effect is clearly outweighed by public health, safety, or compelling public interests. *See Mahuiki*, 65 Haw. at 516–17 n.10, 654 P.2d at 881 n.10. That was not done in this case. Here, Petitioner represented to the Commission that he would be willing to design the development so as to minimize the traffic impact as much as possible. It does not appear from the record that the Commission considered Petitioner's offer as we think it was required to do under the statute.

On remand, the Commission should reconsider the Permit Petition and determine whether the traffic generated by the development will or will not have a substantial adverse environmental or ecological effect on the coastal zone. If the Commission finds that the traffic *will not* have such a substantial adverse effect, then the Commission should approve the Permit Petition without conditions relating to the traffic.

If the Commission finds that the traffic *will* have such a substantial effect, but that the effect can be practicably minimized and, as minimized, the effect is clearly outweighed by public health, safety, or compelling public interests, the Commission should approve the Permit Petition. In order to achieve the minimization, the Commission may impose reasonable conditions on the development. If, of course, the development cannot be made to conform to HRS § 205A–26(2)(A), then the Commission should deny the Permit Petition.

This opinion is not meant to prevent the Commission from imposing other reasonable conditions affecting matters within the purview of the CZMA, such as the viewplanes to the ocean, where such may be deemed necessary to comply with the intent of the CZMA.

## CONCLUSION

We affirm the Commission's denial of the Boundary Petition. We vacate the denial of the Permit Petition and remand the matter to the Commission for further proceedings consistent with this opinion.

*Larry Thomas Topliss*, Petitioner–Appellant, *pro se.*

*Michael J. Matsukawa*, Corporation Counsel (*Anson K. Lee*, Deputy Corporation Counsel, and *Patricia K. O'Toole*, Deputy Corporation Counsel, with him on the brief), County of Hawai'i, for the Planning Commission.