STOP H-3 ASSOCIATION; LIFE OF THE LAND; CONSERVA-
TION COUNCIL FOR HAWAII; SIERRA CLUB, HAWAII
CHAPTER; and HUI MALAMA AINA O KO'OLAU, Appellants,
*v.* STATE OF HAWAII DEPARTMENT OF TRANSPORTA-
TION; BOARD OF LAND AND NATURAL RESOURCES;
HAWAII AUDUBON SOCIETY; HAWAII TRAIL AND MOUN-
TAIN CLUB; PIG HUNTERS ASSOCIATION OF OAHU;
HAWAII DREDGING AND CONSTRUCTION COMPANY;
CONSTRUCTION INDUSTRY LEGISLATIVE ORGANIZA-
TION; KANEOHE NEIGHBORHOOD BOARD NO. 30; BUILD-
ING INDUSTRY ASSOCIATION OF HAWAII; HAWAII
CONSTRUCTION AND BUILDING TRADES COUNCIL;
CEMENT AND CONCRETE PRODUCTS INDUSTRY OF
HAWAII, Appellees

NO. 10164

(CIVIL NO. 80698)

SEPTEMBER 18, 1985

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, JJ.,
AND INTERMEDIATE COURT OF APPEALS
ASSOCIATE JUDGE WALTER M. HEEN IN PLACE OF
WAKATSUKI, J., DISQUALIFIED

OPINION OF THE COURT BY LUM, C.J.

This is an appeal from a lower court order upholding the granting of a Conservation District Use Permit to the state Department of Transportation for construction of an interstate highway through North Halawa Valley. Appellants Stop H-3 Association; Life of the Land; Conservation Council of Hawaii; Sierra Club, Hawaii Chapter; and Hui Malama Aina O Koʻolau challenge the state Board of Land and Natural Resources' authority to issue the permit. As we conclude that the Board acted within its statutory powers, we affirm the ruling of the court below.

I.

The H-3 highway is part of a planned interstate highway system designed to serve the major population centers and defense establishments on Oahu. As formulated, this segment of the network will connect

the major military installations and populous areas of the leeward and windward sides of the island by traversing the Koolau Mountain Range and requires the absorption of certain conservation lands.[1]

In 1975, the state Department of Transportation applied to the state Board of Land and Natural Resources (hereinafter the Board) for alignment of H-3 from western Honolulu on the leeward coast via the Halawa Interchange, South Halawa Valley and Moanalua Valley, through the Koolaus to Haiku Valley, Hoomaluhia Park, and the Halekou Interchange, on eastern windward Oahu. Though the Board granted a Conservation District Use Permit, it was later voided by a 1976 United States Ninth Circuit Court of Appeals decision that Moanalua Valley was entitled to protection as a historic site under federal law.[2] *Stop H-3 Ass'n v. Coleman,* 533 F.2d 434 (9th Cir. 1976), *cert. denied sub nom. Wright v. Stop H-3 Ass'n,* 429 U.S. 999 (1976).

The trans-Koolau leg of H-3 was subsequently realigned through North Halawa Valley, a conservation district, and, in 1981, the Department of Transportation petitioned the Board for amendment of the 1975 permit. This proposal contemplates a divided four-lane highway beginning at the Halawa interchange and passing through the valley with a combination of at-grade and elevated sections to twin bore, 5100 foot long tunnels through the Koolau range, where it merges with the previously approved windward alignment. The highway will be over 100 feet wide in some places requiring substantial cuts to be made in the valley walls and relocation of the Halawa stream bed. Approximately 136 acres of conservation land will be absorbed.[3] The surveys and

---

[1] The system is comprised of H-1, H-2, and H-3. H-2, the majority of H-1, and portions of H-3 are already completed.

[2] Because it is slated to receive financial aid from the federal government, the H-3 project has been the subject of extensive litigation in the federal courts. *See Stop H-3 Ass'n v. Volpe* 349 F. Supp. 1047 (D. Hawaii 1972); *Stop H-3 Ass'n v. Brinegar,* 389 F. Supp. 1102 (D. Hawaii 1974), *rev'd,* 533 F.2d 434 (9th Cir.), *cert. denied,* 429 U.S. 999 (1976); *Stop H-3 Ass'n v. Coleman,* 533 F.2d 434 (9th Cir.), *cert. denied,* 429 U.S. 999 (1976); *Stop H-3 Ass'n v. Lewis,* 538 F. Supp. 149 (D. Hawaii 1982), *rev'd,* 740 F.2d 1442 (9th Cir. 1984); *Stop H-3 Ass'n v. Dole,* 740 F.2d 1442 (9th Cir. 1984), *cert. denied sub nom. Yamasaki v. Stop H-3,* ___ U.S. ___, 105 S. Ct. 2344 (1985). To date none of the federal decisions have rendered moot our consideration of the instant appeal.

[3] A 1,000 foot wide corridor assumed for purposes of the Conservation District Use Application analysis indicated that approximately 797 acres of conservation lands will be required. However, the Environmental Impact Statement estimates that actually only 136 acres will be absorbed by the highway.

environmental impact statement prepared for the project indicate significant environmental consequences to the area.

After a public hearing, the Board approved the amendment on January 26, 1982 but on July 12, 1983 the permit was invalidated by the circuit court ruling that a contested case hearing on the Department of Transportation's use application was required. *Stop H-3 Ass'n v. State of Hawaii, Department of Land and Natural Resources,* Civ. No. 69450 (1st Cir. July 12, 1983). To conform to the court's ruling, hearings were held from September 13 to September 15, 1983.

On November 8, 1983, the Board entered extensive findings of fact and conclusions of law determining that the H-3 North Halawa Valley adjustment would not be detrimental to the conservation of necessary forest growth, the conservation and development of water resources adequate for present and future needs, and the preservation of open space areas for the public use and enjoyment. Numerous other findings addressing concerns over effects on the area's flora, fauna, and archaeological sites were also rendered.

While recognizing that environmental impacts would result, the Board concluded that the project met the requirements of Section 13-2-11(c)(8) of the Department of Land and Natural Resources' Administrative Rules (hereinafter cited as DLNR Rules)[4] authorizing government uses of conservation land where the public benefit outweighs the impact on the district,[5] and that these effects would be mitigated by

---

[4]Title 13, Chapter 2, *Administrative Rules of the Department of Land and Natural Resources* (1984).

[5]The Board found that the existing trans-Koolau highways will soon be inadequate to serve the growing population concentrations the proposed highway is intended to serve. Generally, it determined that H-3 was a government use and that:

The Interstate Route H-3 Highway project proposed by Applicant, Department of Transportation, will result in substantial public benefits[.]

. . .

Although impacts will result to the conservation district as a result of the proposed Interstate Route H-3 Highway project, any impacts on the conservation district will be mitigated with the conditions imposed by the Land Board in its Decision herein, and, also, with the additional measures to be taken by the Applicant, DOT, to mitigate such impacts, to such an extent that the public benefits to be derived from the H-3 project far outweigh any impacts to the conservation district.

compliance with certain specified conditions.[6] Consequently, it decided that the new H-3 segment conformed with all relevant statutory and regulatory provisions and granted the Conservation District Use Permit amendment as a "conditional use" pursuant to DLNR Rule § 13-2-1. The Board also determined that, under its regulations, the highway was authorized as a "permitted use" should its "conditional use" designation be overruled. *See* DLNR Rule § 13-2-1.

Appellants subsequently appealed to the circuit court which entered an order affirming the Board's decision on August 20, 1984. Timely appeal to this court was then taken.

## II.

The major contention on appeal is that the Board exceeded its authority in approving the H-3 North Halawa Valley realignment under DLNR Rule § 13-2-11(c)(8). Appellants claim that while the Board has jurisdiction over conservation districts, it may not authorize uses of these lands that are inconsistent with a conservation classification, even if a greater public benefit will result. Accordingly, they argue that because a major highway is *sui generis* incompatible with sound conservation principles, only the Land Use Commission may permit a project of this magnitude by adopting a more permissive land use classification for the North Halawa Valley. We disagree. The relevant statutes involved and extensive findings of facts support the Board's conclusion.

The conservation district zoning designation is the most restrictive of the four land use classifications that the state Land Use Commission is authorized to establish under HRS § 205-2 (1976 & Supp. 1984).[7] These districts are to include areas necessary for the protection, preservation, and conservation of natural, historic, and scenic resources, open spaces, and areas of value for recreational and "other permitted uses not

---

[6]These conditions include requirements for reforestation, the containment of feral pigs, the preservation of archaeological sites, and measures for the control and containment of dike water, surface run-off, flooding, erosion, siltation, and ground water, recharge.

[7]Under HRS § 205-2(4) (Supp. 1984) areas established prior to July 11, 1961 as "forest and water reserve zones" are renamed "conservation districts"; thereafter, the Land Use Commission is empowered to determine the district boundaries.

detrimental to a multiple use conservation concept." HRS § 205-2(4) (Supp. 1984).[8]

While authority over rural, urban, and agricultural districts is vested in the respective county governments, conservation districts are to be administered by the state Department of Land and Natural Resources (hereinafter the Department) pursuant to guidelines prescribed by HRS § 183-41 (Supp. 1984).[9] HRS § 205-5 (1976). Under that provision, the Department is empowered to permit a controlled and regulated use of land not inconsistent with conservation. *See* HRS §§ 183-41(a), (c)(1), (3) (Supp. 1984). Indeed, the purpose of the legislation as enacted, is to support the maximum development of lands in the forest and water reserve at its highest and best use. Hse. Stand. Comm. Rep. No. 70 in 1957 House Journal at 639.

In order to effectuate sound multi-use management of conservation zones, the Department is authorized to adopt and implement regulations governing land utilization. Generally, activities other than those thereby permitted may not be allowed.[10] HRS § 183-41(a) (Supp. 1984); HRS §§ 183-41(c)(1), (3) (Supp. 1984). HRS § 183-41(c)(3) (Supp. 1984) thus provides:

> The department shall, after notice and hearing as provided herein, adopt such regulations governing the use of land within the boundaries of the forest and water reserve zones as will not be detrimental to the conservation of necessary forest growth and the conservation and development of water resources adequate for present and future

[8]The statute provides:

Conservation districts shall include areas necessary for protecting watersheds and water sources, preserving scenic and historic areas; providing park lands, wilderness, and beach reserves; conserving endemic plants, fish, and wildlife; preventing floods and soil erosion; forestry; open space areas whose existing openness, natural condition, or present state of use, if retained, would enhance the present or potential value of abutting or surrounding communities, or would maintain or enhance the conservation of natural or scenic resources; areas of value for recreational purposes; other related activities; and other permitted uses not detrimental to a multiple use conservation concept.

[9]The Department of Land and Natural Resources is headed by the Board of Land and Natural Resources and acts by and through that entity. *See* HRS § 26-15 (Supp. 1984).

[10]Except for non-conforming uses, HRS § 183-41(b), and temporary variances, HRS § 183-41(c)(1), uses not in accord with the adopted regulations pursuant to HRS § 183-41(c)(3) are prohibited. HRS § 183-41(a).

needs and the conservation and preservation of open space areas for public use and enjoyment.

The department by means of the regulations may establish sub-zones within any forest and water reserve zone and specify the land uses permitted therein which may include but are not limited to, farming, flower gardening, operation of nurseries or orchards, growth of commercial timber, grazing, recreational or hunting pursuits, or residential use. The regulations may also control the extent, manner, and times of the permitted uses, and may specifically prohibit unlimited cutting of forest growth, soil mining, or other activities detrimental to good conservation practices.

The Department, by its administrative rules and regulations, has established a system of permitted use conservation district subzones. DLNR Rule §§ 13-2-9, -15. The North Halawa Valley has been placed in the Protective (P) and Resource (R) subzones which among other things permits a "[g]overnmental use not enumerated herein where public benefit outweighs any impact on the conservation district."[11] DLNR

---

[11]Boundaries of the (P) subzone encompass areas necessary for the preservation and protection of water resources, historic and archaeological sites, and plant and wildlife ecosystems. The permitted uses are:

(1) Research, recreational, and eductional use which require no physical facilities;

(2) Establishment and operation of marine plant, and wildlife, sanctuaries and refuges, wilderness and scenic areas, including habitat improvements;

(3) Restoration or operation of significant historic and archaeological sites listed on the national or state register;

(4) Maintenance and protection of desired vegetation, including removal of dead, deteriorated and noxious plants;

(5) Programs for control of animal, plant, and marine population, to include fishing and hunting;

(6) Monitoring, observing, and measuring natural resources;

(7) Occasional use; and

(8) *Governmental uses not enumerated herein where the public benefit outweighs any impact on the conservation district.* (Emphasis added.)

DLNR Rule § 13-2-11.

(R) subzone boundaries encompass lands necessary and suitable for parklands, commercial timber and outdoor recreational uses. The permitted uses include:

(1) All permitted uses stated in the (P) and (L) subzone;

(2) Aquaculture;

(3) Artificial reefs; and

(4) Commercial fishing operations.

DLNR Rule § 13-2-13.

Rule § 13-2-11(c)(8).

A public administrative agency possesses only such rule-making authority as is delegated to it by the state legislature and may only exercise this power within the framework of the statute under which it is conferred. *Pacific Gas & Electric Co. v. United States,* 664 F.2d 1133, 1136 (9th Cir. 1981); *Rowe v. West Virginia Department of Corrections,* 292 S.E.2d 650, 653 (W. Va. 1982); *Harris v. Alcoholic Beverage Central Appeals Board,* 228 Cal. App. 2d 1, 6, 39 Cal. Rptr. 192, 195 (1964); 73 C.J.S. *Public Administrative Law* § 89 (1983). Administrative rules and regulations which exceed the scope of the statutory enactment they were devised to implement are invalid and must be struck down. *Id.* Similarly, application of an otherwise valid regulation in such a way as to achieve a statutorily impermissible end cannot be sanctioned by allowing the administrative body's action to stand. *Hall v. Schweiker,* 660 F.2d 116, 119 (5th Cir. 1981).

As Appellants do not argue that DLNR Rule § 13-2-11(c)(8) is *per se* invalid, we are forestalled from questioning its basic soundness. Rather, Appellants claim that while the rule has viable applications, H-3 will so drastically compromise the integrity of the conservation district that use of the regulation in this instance is absolutely precluded under the enabling statute. Our inquiry must thus concern the extent to which HRS § 183-41 may authorize a publicly beneficial use of conservation lands.

The primary duty of the courts in interpreting statutes is to ascertain and give effect to the intention of the legislature which, in the absence of a clearly contrary expression is conclusively obtained from the language of the statute itself. *Kaiama v. Aguilar,* 67 Haw. 549, 696 P.2d 839 (1985). Under HRS § 183-41(c)(3), the Department of Land and Natural Resources has regulatory authority to permit land utilizations that are not detrimental to the "conservation of necessary forest growth, the conservation and development of adequate water resources for present and future needs, and the conservation and preservation of open spaces for the public use and enjoyment." By the plain meaning of the statutory language, the Department's implementing regulations may only validly operate within these bounds.

While it is acknowledged that H-3 will have significant effects on the conservation district, the Board found that the highway would not be injurious to forest growth, water resources, and open spaces. These findings of fact are presumptively correct, *Campbell v. DePonte,* 57

Haw. 510, 513, 559 P.2d 739, 741 (1977), and cannot be set aside on appeal unless they are shown to be "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." HRS §§ 91-4(g), -15 (1976). This is the contesting party's burden which Appellants have failed to meet by specifically challenging the above determinations. *Campbell v. De Ponte, supra.* We therefore conclude that DLNR Rule § 13-2-11(c)(8) was appropriately applied and the Conservation Use Permit properly granted.

### III.

Appellants further contend that the Board lacked jurisdiction to authorize the H-3 North Halawa project as a "conditional use." Specifically, they claim that because HRS § 184-41(c)(3) only empowers the Department to adopt regulations designating permitted uses of the conservation subzone, approval of the Conservation District Use Permit amendment as a "conditional use" was improper and renders the permit invalid. We find no merit in Appellants' argument.

By its administrative rules, the Department has created several categories of land uses permitted in the conservation district subzones including "permitted uses" and "conditional uses" which are defined as:

"Permitted use" means a primary use or uses of land as permitted under subchapter 2 or any amendment thereto.

.   .     .    .

"Conditional uses" means a use, other than a permitted use, including subdivision, which may be allowed by the board under certain conditions as set forth in this chapter and as determined by the Board under Reg. 4.

DLNR Rule § 13-2-1.

While granting a "conditional use" permit amendment, the Board alternatively approved the highway as a "permitted use." As we have determined that the Board acted within its statutory authority in ruling that, pursuant to DLNR Rule § 13-2-11(c)(8), H-3 was a permissible use of the lands located within the valley's conservation district subzones, the permit may be upheld as a "permitted use." However, we need not go so far as to overrule the "conditional use" designation.

HRS § 183-41(c)(3) empowers the Department to adopt regulations establishing conservation subzones and specifying "the land uses permitted therein." Merely because the regulation establishes classes of

permissible uses does not mean that a "conditional use" is not a use that may be permitted under HRS § 183-41(c)(3). As long as the authorized activity will not have a detrimental impact on necessary forest growth, present and future water resources, and/or open spaces for the public use and enjoyment, it may be allowed. HRS § 183-41(c)(3). The fact that approval of the use is conditioned on certain remedial measures is not material. Appellants have failed to challenge the Board's findings that H-3 meets these demands. Granting of the Conservation District Use Permit amendment as a "conditional use" was valid.

IV.

According to our construction of HRS § 183-41(c)(3) and based on the record presented, the BLNR acted within its authority in authorizing realignment of the H-3 highway through the North Halawa Valley and in conditioning its approval on compliance with measures mitigating the environmental consequences to the area. The lower court order upholding the Board's action is affirmed. All other issues raised by Appellants are dismissed as being without merit.

*Boyce R. Brown, Jr.* (With him on the briefs: *Cynthia H. H. Thielen, Brown and Johnston,* for Stop H-3 Association; Life of the Land; Conservation Council for Hawaii; Sierra Club, Hawaii Chapter; and *Ronald Albu, Legal Aid Society of Hawaii,* for Hui Malama Aina O Koʻolau) for Appellants.

*Keith Y. Tanaka* and *Edwin P. Watson,* Deputy Attorneys General, (With *Keith Y. Tanaka* on the brief: *Terence S. Yamamoto* and *Randal Y. K. Young,* Deputy Attorneys General, for State of Hawaii, Department of Transportation; *Louann Kam* for Hawaiian Dredging and Construction Company; and *Kenneth Takenaka* for Construction Industry Legislative Organization, Inc.) for Appellees.