**Electronically Filed
Intermediate Court of Appeals
29160
28-OCT-2010
09:26 AM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

KEWALO OCEAN ACTIVITIES (KOA) and KAHALA CATAMARANS, INC.,
Plaintiffs-Appellants,
v.
ANTHONY J.H. CHING, IN HIS OFFICIAL CAPACITY AS EXECUTIVE
DIRECTOR OF THE HAWAII COMMUNITY DEVELOPMENT AUTHORITY; and
BRENNON T. MORIOKA, IN HIS OFFICIAL CAPACITY AS DIRECTOR
OF THE DEPARTMENT OF TRANSPORTATION OF THE STATE OF HAWAII,
Defendants-Appellees,
and
JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10;
DOE PARTNERSHIPS 1-10; DOE ENTITIES 1-10; and DOE
GOVERNMENTAL ENTITIES 1-10, Defendants

NO. 29160

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 07-1-1453)

OCTOBER 28, 2010

FOLEY, PRESIDING J., FUJISE AND LEONARD, JJ.

OPINION OF THE COURT BY FOLEY, PRESIDING J.

Plaintiffs-Appellants Kewalo Ocean Activities and
Kahala Catamarans, Inc. (collectively, KOA) appeal from the Final
Judgment as to All Claims and All Parties (Judgment) filed on
May 5, 2008 in the Circuit Court of the First Circuit (circuit

court).[1]  The circuit court entered judgment in favor of Defendants-Appellees Anthony J.H. Ching (Ching), in his official capacity as Executive Director of the Hawaii Community Development Authority (HCDA), and Brennon T. Morioka (Morioka), in his official capacity as Director of the Department of Transportation of the State of Hawaii (DOT)[2] (collectively, State Defendants) and against KOA and dismissed KOA's Complaint for Declaratory and Injunctive Relief (Complaint) with prejudice. The circuit court issued the Judgment pursuant to the "Findings of Fact, Conclusions of Law and Order Granting Defendant State of Hawai'i's Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment as to Plaintiffs' Complaint Filed August 7, 2007" (FOF/COL/Order) filed on March 25, 2008.

On appeal, KOA argues that the circuit court

(1)  erred in impliedly concluding that Hawaii Revised Statutes (HRS) § 206E-4 (1993) authorized HCDA to enact rules with regard to Kewalo Basin Harbor (the Harbor)[3];

(2)  erred when it disregarded the plain language of HRS Chapter 266 and instead relied upon the legislative history of 1991 Haw. Sess. Laws Act 272, at 607, (Act 272) to conclude that DOT does not have jurisdiction over the Harbor;

(3)  alternatively, erred in basing its conclusion that DOT does not have jurisdiction over the Harbor on legislative history, when the legislative history does not suggest that the Harbor is to be excluded from the category of "commercial harbors";

---

[1]  The Honorable Karen S.S. Ahn presided.

[2]  Although in KOA's Complaint, KOA named as defendants Daniel Dinell, in his official capacity as Executive Director of HCDA, and Barry Fukunaga, in his official capacity as Director of DOT, by the time the circuit court filed its FOF/COL/Order, Ching and Morioka had become HCDA Executive Director and acting Director of DOT, respectively, and the court substituted them as parties for the former directors.

[3]  On appeal, the parties refer to Kewalo Basin Harbor and Kewalo Basin interchangeably.  For the sake of simplicity, throughout our discussion, we refer to it as the Harbor.

(4)   erred in concluding that DOT's jurisdiction and powers are subject to restrictions imposed by HCDA statutes (HRS Chapter 206E);

(5)   erred in concluding that construing the statutes to grant HCDA jurisdiction over the Kakaako Community Development District (Kakaako District), while maintaining DOT's jurisdiction over the Harbor, would lead to an absurd result; and

(6)   erred in concluding that "the relevant sections of HRS [C]hapter 206E are the more specific provisions and the relevant sections of HRS [C]hapter 266 are the more general provisions."

KOA asks that we vacate the FOF/COL/Order and "reverse and remand" this case to the circuit court.  We affirm the circuit court's Judgment because we conclude, <u>inter alia</u>, that HCDA has jurisdiction and administrative authority over the development of the Harbor pursuant to HRS Chapter 206E.

I.

The FOF/COL/Order provides the following factual background, which is undisputed:

### FINDINGS OF FACT

. . . .

2.   In 1976, HCDA was established by the [State of Hawai'i (State)] legislature to facilitate the redevelopment of certain underdeveloped and blighted areas within the State.

3.   In 1990, title to lands within the [Kakaako District], which includes [the Harbor], was conveyed to HCDA by the legislature pursuant to Act 86 (1990) (HRS § 206E-31).

4.   Prior to 1990, the DOT operated and managed all harbors in the State, including [the Harbor].

5.   In 1991, one year after the legislature conveyed title to [the Harbor] to HCDA, the legislature enacted Act 272 (1991), in which it amended parts of HRS [C]hapter 266 to clarify that the DOT had care and control of all commercial harbors in the State.  [The Harbor] meets the definition of a commercial harbor.

6.   HCDA currently holds title to lands underlying [the Harbor].  The DOT currently operates and manages [the Harbor].

7.   The HCDA has publicly announced its intention to transfer management and operation of [the Harbor] from the DOT to the HCDA, has held public hearings, and has issued

3

> proposed administrative rules regarding the proposed transfer.
>
> 8. [KOA] filed [its Complaint] herein on August 7, 2007, challenging the proposed transfer of authority, operations and management of [the Harbor] from the DOT to the HCDA, as well as HCDA's proposed administrative rules in connection therewith, alleging that those actions are not authorized by statute, and are in violation of [HRS].

On November 28, 2007, the State Defendants filed a Motion for Judgment on the Pleadings or, in the Alternative, for Summary Judgment as to [KOA's Complaint]" (the State's MSJ). The State Defendants argued that the legislature had given HCDA the authority to manage the Harbor, which authority subsequent legislative action confirmed. KOA filed a memorandum in opposition, and the State Defendants filed a reply. On January 11, 2008, the State Defendants filed a supplemental memorandum in support of their motion. KOA filed a supplemental memorandum in support of its opposition.

After a February 19, 2008 hearing on the State's MSJ, the circuit court filed its FOF/COL/Order in March 2008. The circuit court characterized the issue as "whether, in 1976, the State legislature intended to transfer jurisdiction and administrative authority from DOT to HCDA for lands underlying [the Harbor], the title for which is held by HCDA." Based in part on HRS Chapters 206E and 266 and the legislative history underlying 2006 Haw. Sess. Laws Act 165, at 653 (Act 165) and Act 272, the circuit court granted the State's MSJ and dismissed the Complaint with prejudice.

Citing to HRS §§ 206E-4, 206E-31 (2001 Repl.), 206E-31.5 (Supp. 2009), and 206E-33 (2001 Repl.), the circuit court stated in its Conclusions of Law (COLs) in the FOF/COL/Order that it was "undisputed that, as part of setting up the [Kakaako District], the legislature granted to HCDA title to [the Harbor] including submerged lands" and "appropriated to HCDA broad powers to plan for and carry out the redevelopment of the district, without exception, on a comprehensive and long-term basis." The circuit court went on to state the following in its COLs:

> 11. It is true that the legislature has not specifically addressed its intent regarding the administrative jurisdiction of [the Harbor] as between the

4

DOT and HCDA. It also is true that the legislature has left HRS Chapter 266 to say that the DOT shall operate and maintain all commercial harbors controlled by the State. [The Harbor] meets the definition of a commercial harbor. One year after it deeded Kakaako District to HCDA, the legislature enacted Act 272 (1991), in which it amended parts of HRS [C]hapter 266 to clarify that the DOT had care and control of all "commercial" harbors in the State. However, Act 272's legislative history suggests that these changes were made in the context of the legislature's transfer of the boating and coastal areas programs to another state department, while maintaining authority over commercial harbors within the DOT. The court also notes that HRS Chapter 266 makes clear that the powers of the [DOT] are subject to limitations imposed by other statutes.

12. All of what we have discussed being so, to the extent at issue here, HRS [C]hapters 266 and 206E appear to relate to the same subject matter. Pursuant to [State v. Batson, 99 Hawaiʻi 118, 120, 53 P.3d 257, 259 (2002)], we presume all legislative acts to be valid. The court has reviewed both sets of provisions in an effort to try to read them together or to seek clarification of whether the legislature intended to give HCDA title to the land underlying [the Harbor] but not jurisdiction therefor. The court cannot so conclude, for to do so would lead to an absurd result, to wit, that the legislature wanted HCDA to comprehensively and for the long-term plan, renew, and redevelop the Kakaako "District," [sic] which specifically includes [the Harbor], and yet did not want HCDA to be able to touch any of the Basin's improvements. This seems illogical and inconsistent with the legislature's broad mandate and objectives with respect to HCDA and the Kakaako District.

19. [sic][4] Finally, the court concludes that the relevant sections of HRS [C]hapter 206E are the more specific provisions and the relevant sections of HRS [C]hapter 266 are the more general provisions.

(Footnote added.)

## II.

### A. SUMMARY JUDGMENT

An appellate court "reviews an award of summary judgment under the same standard applied by the circuit court." Yoneda v. Tom, 110 Hawaiʻi 367, 371, 133 P.3d 796, 800 (2006) (citation omitted). Thus, this court reviews the circuit court's grant or denial of summary judgment de novo. Sierra Club v. Dep't of Transp., 115 Hawaiʻi 299, 312, 167 P.3d 292, 305 (2007). Moreover,

summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A fact is material if

---

[4] The COL is incorrectly numbered "19," when it should be "13." Throughout this opinion, we refer to the COL as "COL 13."

> proof of that fact would have the effect of
> establishing or refuting one of the essential elements
> of a cause of action or defense asserted by the
> parties. The evidence must be viewed in the light
> most favorable to the non-moving party. In other
> words, we must view all of the evidence and the
> inferences drawn therefrom in the light most favorable
> to the party opposing the motion.

*Id.* at 313, 167 P.3d at 306 (citations omitted).

<u>Unite Here! Local 5 v. City & County of Honolulu</u>, 123 Hawai'i 150, 170, 231 P.3d 423, 443 (2010) (brackets omitted).

### B. STATUTORY INTERPRETATION

"The interpretation of a statute is a question of law which this court reviews *de novo.*" <u>Sierra Club v. Dep't of Transp. of State of Hawai'i</u>, 120 Hawai'i 181, 197, 202 P.3d 1226, 1242 (2009) (quoting <u>Liberty Mut. Fire Ins. Co. v. Dennison</u>, 108 Hawai'i 380, 384, 120 P.3d 1115, 1119 (2005)).

The Hawai'i Supreme Court has established the following principles for interpreting a statute:

> First, the fundamental starting point for
> statutory interpretation is the language of the
> statute itself. Second, where the statutory language
> is plain and unambiguous, our sole duty is to give
> effect to its plain and obvious meaning. Third,
> implicit in the task of statutory construction is our
> foremost obligation to ascertain and give effect to
> the intention of the legislature, which is to be
> obtained primarily from the language contained in the
> statute itself. Fourth, when there is doubt,
> doubleness of meaning, or indistinctiveness or
> uncertainty of an expression used in a statute, an
> ambiguity exists. And fifth, in construing an
> ambiguous statute, the meaning of the ambiguous words
> may be sought by examining the context, with which the
> ambiguous words, phrases, and sentences may be
> compared, in order to ascertain their true meaning.

> *Awakuni v. Awana*, 115 Hawai'i 126, 133, 165 P.3d 1027, 1034
> (2007) (citation omitted). This court has also instructed
> that statutory language must be read "in the context of the
> entire statute and construe[d] in a manner consistent with
> its purpose." *Hous. Fin. & Dev. Corp. v. Castle,* 79 Hawai'i
> 64, 77, 898 P.2d 576, 589 (1995) (citation omitted). The
> same general principles that apply to statutory
> interpretation also apply to interpretation of
> administrative rules. *Allstate Ins. Co. v. Ponce,* 105
> Hawai'i 445, 454, 99 P.3d 96, 105 (2004) (citation omitted).

<u>Unite Here!</u>, 123 Hawai'i at 170-71, 231 P.3d at 443-44.

The supreme court has adopted a three-step approach when interpreting statutes that appear to relate to the same subject matter:

> First, legislative enactments are presumptively valid and "should be interpreted [in such a manner as] to give them effect." *State v. Spencer*, 68 Haw. 622, 624, 725 P.2d 799, 800 (1986) (citation omitted). Second, "[l]aws in pari materia, or upon the same subject matter, shall be construed with reference to each other. What is clear in one statute may be called in aid to explain what is doubtful in another." HRS § 1-16 (1985); *Kam v. Noh,* 70 Haw. 321, 325, 770 P.2d 414, 417 (1989). Third, "where there is a 'plainly irreconcilable' conflict between a general and a specific statute concerning the same subject matter, the specific will be favored. However, where the statutes simply overlap in their application, effect will be given to both if possible, as repeal by implication is disfavored." *Mahiai v. Suwa,* 69 Haw. 349, 356-57, 742 P.2d 359, 366 (1987) (citations omitted).

> *Richardson v. City and County of Honolulu*, 76 Hawai'i 46, 54-55, 868 P.2d 1193, 1201-02, *reconsideration denied,* 76 Hawai'i 247, 871 P.2d 795 (1994), *judgment aff'd* 124 F.3d 1150 (9th Cir. 1997) (brackets in original).

State v. Batson, 99 Hawai'i 118, 120, 53 P.3d 257, 259 (2002).

### C.   CONCLUSIONS OF LAW

A trial court's conclusion of law

> is not binding upon an appellate court and is freely reviewable for its correctness. This court ordinarily reviews [conclusions of law] under the right/wrong standard. Thus, a [conclusion of law] that is supported by the trial court's findings of fact and that reflects an application of the correct rule of law will not be overturned. However, a [conclusion of law] that presents mixed questions of fact and law is reviewed under the clearly erroneous standard because the court's conclusions are dependent upon the facts and circumstances of each individual case.

> *State v. Reis*, 115 Hawai'i 79, 84, 165 P.3d 980, 985 (2007) (internal quotation marks, citations, and original brackets omitted) (quoting *Allstate Ins. Co. v. Ponce,* 105 Hawai'i 445, 453, 99 P.3d 96, 104 (2004)).

Sierra Club, 120 Hawai'i at 196, 202 P.3d at 1241.

## III.

The issue in this case is whether HCDA has jurisdiction and administrative authority (authority) over the development of the Harbor. The circuit court entered its Judgment pursuant to the FOF/COL/Order, in which the court granted the State's MSJ and dismissed with prejudice KOA's Complaint. In the State's MSJ, the State Defendants argued that there was no genuine issue of material fact regarding whether the proposed transfer of authority over the Harbor from DOT to HCDA, as well as HCDA's proposed administrative rules in connection therewith, were

authorized by statute because the legislature gave HCDA the authority to manage the Harbor.

## A. PLAIN LANGUAGE

KOA contends the circuit court erred in granting the State's MSJ because based on the clear and unambiguous language of HRS §§ 266-1 (2007 Repl.) and 266-2(b) (2007 Repl.), DOT has exclusive authority over the Harbor. KOA cites to State v. Klie, 116 Hawai'i 519, 174 P.3d 358 (2007), to support this argument. There, the Hawai'i Supreme Court stated:

> We cannot change the language of the statute, supply a want, or enlarge upon it in order to make it suit a certain state of facts. We do not legislate or make laws. Even when the court is convinced in its own mind that the legislature really meant and intended something not expressed by the phraseology of the act, it has no authority to depart from the plain meaning of the language used.

Id. at 525, 174 P.3d at 364 (brackets in original omitted) (quoting State v. Sakamoto, 101 Hawai'i 409, 413, 70 P.3d 635, 639 (2003)).

HRS § 266-1 provides that "[a]ll commercial harbors and roadsteads, and all commercial harbor and waterfront improvements belonging to or controlled by the State, and all vessels and shipping within the commercial harbors and roadsteads shall be under the care and control of the [DOT]." HRS § 266-2(b) provides in relevant part that "[n]otwithstanding any law or provision to the contrary, the [DOT] is authorized to plan, construct, operate, and maintain any commercial harbor facility in the State[.]"

### 1. Language of HRS §§ 266-1 and 266-2(b) alone

Although KOA urges us to consider the language of HRS §§ 266-1 and 266-2(b) in isolation, the issue in this case is whether HCDA or DOT has authority over the Harbor, and we must also consider the language of HRS Chapter 206E, which concerns HCDA's authority over Kakaako District, among other things. HRS §§ 206E-31, 206E-32 (2001 Repl.), and 206E-33. When juxtaposed with HRS §§ 206E-31 through 206-33, HRS §§ 266-1 and 266-2(b) are not clear and unambiguous with regard to which entity has authority over the Harbor. HRS § 266-1 provides DOT with jurisdiction over all state commercial harbors. HRS § 266-1

("All commercial harbors . . . shall be under the care and control of the [DOT].").  Chapter 206E mandates that HCDA redevelop Kakaako District, including the Harbor, which is a commercial harbor.  HRS §§ 206E-2(4) (2001 Repl.), 206E-31, 206E-32, and 206E-33.  As the circuit court rightly suggested in its COLs, HRS Chapters 266 and 206E concern the same subject matter.

    2.    "Notwithstanding" language in HRS § 266-2(b)

        KOA argues that the phrase "[n]otwithstanding any law or provision to the contrary" in HRS § 266-2(b) means that the DOT statutes govern over and supersede the HCDA statutes.  KOA cites to the following published cases to support this contention:  State v. Smith, 103 Hawai'i 228, 231, 81 P.3d 408, 411 (2003); Klie; Cisneros v. Alpine Ridge Group, 508 U.S. 10, 18, 113 S. Ct. 1898, 1900 (1993); and Campbell v. Minneapolis Pub. Hous. Auth. ex rel. City of Minneapolis, 168 F.3d 1069, 1075 (8th Cir. 1999).

        In Smith, the circuit court convicted Smith of Promoting a Dangerous Drug in the Third Degree, in violation of HRS § 712-1243, and Unlawful Use of Drug Paraphernalia, in violation of HRS § 329-43.5(a).  Smith, 103 Hawai'i at 229, 81 P.3d at 409.  The issue was whether the circuit court should sentence Smith pursuant to HRS § 706-606.5(1) (1993 & Supp. 2002), regarding sentencing of repeat offenders, 103 Hawai'i at 229 & n.3, 81 P.3d at 409 & n.3, or HRS § 706-622.5 (Supp. 2002), regarding sentencing for first-time drug offenders.  103 Hawai'i at 229-30 & 230 n.4, 81 P.3d at 409-10 & 410 n.4.  Noting that Smith had "admitted to substantial ice use over a substantial period of time," and had "been in several drug treatment programs" and "either absconded or failed to comply," the circuit court sentenced Smith as a repeat offender, pursuant to HRS § 706-606.5.  103 Hawai'i at 231, 81 P.3d at 411.  HRS § 706-606.5(1) provided in relevant part:  "Notwithstanding section 706-669 and any other law to the contrary, any person convicted of . . . any of the following class C felonies: . . . 712-1243 relating to promoting a dangerous drug in the third degree . . .

9

shall be sentenced to a mandatory minimum period of imprisonment without possibility of parole[.]"

Smith filed a motion for reconsideration of the sentence, arguing that she should have been sentenced pursuant to HRS § 706-622.5 (Supp. 2002), which according to its plain language, she argued, "overrode" HRS § 706-606.5. 103 Hawai'i at 232, 81 P.3d at 412. HRS § 706-622.5 provided in relevant part:

> (1) Notwithstanding any penalty or sentencing provision under part IV of chapter 712, a person convicted for the first time for any offense under part IV of chapter 712 involving possession or use, not including to distribute or manufacture as defined in section 712-1240, of any dangerous drug, detrimental drug, harmful drug, intoxicating compound, marijuana, or marijuana concentrate, as defined in section 712-1240, or involving possession or use of drug paraphernalia under section 329-43.5, who is nonviolent, as determined by the court . . . shall be sentenced in accordance with subsection (2) . . . to probation[.]

At a hearing on Smith's motion, the circuit court stated that "when the legislature provided for treatment for first-time drug offenders, they did not mean to preclude the application of repeat offender sentencing." 103 Hawai'i at 232, 81 P.3d at 412. The circuit court then denied the motion. Id.

Smith appealed, and the Supreme Court of Hawai'i affirmed the circuit court's decision on the following grounds:

> In the present matter, HRS § 706-606.5(1) states that the repeat offender statute applies "[n]otwithstanding . . . any other law to the contrary . . . ." See supra note 3. Although HRS § 706-622.5 does contain a similar phrase, the language of the first-time drug offender statute, as compared to the foregoing wording of the repeat offender statute, is markedly narrower in scope: "Notwithstanding any penalty or sentencing provision under part IV of chapter 712 . . . ." See supra note 4 (emphasis added). Thus, inasmuch as the plain and unambiguous language of HRS § 706-606.5 requires application of the repeat offender statute over "any other law to the contrary," we hold that the circuit court did not err in sentencing Smith as a repeat offender pursuant to HRS § 706-606.5.

Id. at 234, 81 P.3d at 414.

In Klie, the State charged Klie with Street Solicitation of Prostitution, in violation of HRS § 712-1207(1). Klie, 116 Hawai'i at 520, 174 P.3d at 359. Klie pled no contest, which plea the District Court of the First Circuit (district court) accepted. Id. Klie then moved for a Deferred Acceptance of No Contest (DANC) plea pursuant to HRS § 853-1 (1993 & Supp.

2009), arguing that pursuant to HRS § 712-1207(5) (Supp. 2009), he was entitled to probation. 116 Hawai'i at 520-21, 174 P.3d at 359-60. HRS § 712-1207(5) provided that "[a]s an option to the mandatory term of thirty days imprisonment, if the court finds the option is warranted based upon the defendant's record, the court may place the defendant on probation for a period not to exceed six months." The State argued that because HRS § 712-1207(4) (Supp. 2009) provided that "[n]otwithstanding any law to the contrary," the court "shall" sentence the defendant to imprisonment or, in the alternative, to probation, the court had no discretion to impose any other sentence. 116 Hawai'i at 521, 174 P.3d at 360. The district court denied the motion on the basis that the court did not have the discretion to accept a DANC plea from Klie. Id.

Klie appealed to this court, arguing that because "the offense charged is probationable, DANC pleas may be considered by the district sentencing court." Id. (brackets omitted). We affirmed the district court's decision. Id. Klie applied for a writ of certiorari, which the Hawai'i Supreme Court granted. Id. Based on HRS § 853-4(5) (Supp. 2005), which provided that DANC pleas did not apply when "[t]he offense charged is nonprobationable," the supreme court vacated the district court's decision and remanded the case. 116 Hawai'i at 522 & 526, 174 P.3d at 361 & 365. The supreme court held that "[b]y the express terms of subsections (4) and (5), the offense under HRS § 712-1207 is probationable and, thus, is not excludable under HRS § 853-4(5)." 116 Hawai'i at 523, 174 P.3d at 362.

Smith and Klie are inapplicable to this case. Here, despite the "notwithstanding" language in HRS § 266-2(b), § 266-4 (2007 Repl.) provides the following limitation on DOT's authority over commercial harbors: "The jurisdiction and powers conferred on the [DOT] are subject to such restrictions as may be imposed by the statutes of the State, and shall be exercised in accordance with the provisions thereof."

Chapter 206E also imposes a limitation on DOT's authority over the Harbor. Under HRS § 206E-4(5) (1993), the

legislature endowed HCDA with the power to "[m]ake rules with respect to its projects," and the Harbor constitutes a "project" pursuant to § 206E-2(4), which defines "project" as

> a specific work or improvement, including real and personal properties, or any interest therein, acquired, owned, constructed, reconstructed, rehabilitated, or improved by the [HCDA], including a residential project, a redevelopment project, or a commercial project, all as defined herein, or any combination thereof[.]

Further evidence that the "notwithstanding" language in HRS § 266-2(b) does not necessarily mean that statute controls is the legislature's passing of Act 165, giving DOT authority over Piers 1 and 2. If KOA's argument on this point were correct, passing Act 165 would not have been necessary.

We find the other published cases to which KOA cites inapplicable, as well. See Cisneros, 508 U.S. at 12, 113 S. Ct. at 1900 (regarding whether § 801 of the Department of Housing and Urban Development Reform Act of 1989, 103 Stat. 2057, violates the Due Process Clause of the Fifth Amendment by abrogating respondents' contract rights to certain rental subsidies); Campbell, 168 F.3d at 1070-71 (regarding whether the United States District Court for the District of Minnesota properly enjoined Minneapolis Public Housing Authority's (MPHA) challenged practices of inquiring into public housing applicants' chemical-dependency treatment histories and requiring applicants to release such records to MPHA, where the MPHA had denied an applicant's motion for class certification in applicant's action against MPHA).

### 3. Explicit language of HRS Chapter 266

KOA maintains that HCDA does not have authority over the Harbor because Chapter 266 does not explicitly state that HCDA has such authority and Chapter 266 does not even include the phrases "commercial harbor" or "management of commercial harbor." Despite the fact that Chapter 266 does not explicitly confer authority over the Harbor on HCDA or include the phrases to which KOA refers, it is undisputed that (1) the legislature conveyed title to the fast and submerged lands within an area that includes the Harbor to HCDA; (2) HCDA was given the mandate to redevelop the area that includes the Harbor; and (3) HCDA was

given broad rule-making powers over its projects and properties to implement its mandate. HRS §§ 206E-33 and 206E-4(5). KOA provides no authority for the notion that in order for HCDA to have authority over the Harbor, the applicable statutes must explicitly name the Harbor or refer to a "commercial harbor," and we find none.

### 4.    Result

The circuit court did not err by failing to find based on the plain language of HRS Chapter 266 that DOT has exclusive authority over the Harbor.

### B.    GENERAL/SPECIFIC

KOA contends the circuit court erred in concluding in COL 13 that "the relevant sections of HRS [C]hapter 206E are the more specific provisions and the relevant sections of HRS [C]hapter 266 are the more general provisions." KOA argues that the reverse is true:

> [T]he DOT statutes grant DOT the **specific** authority and a specific obligation to operate and manage all commercial harbors, including [the Harbor]. On the other hand, the HCDA statutes merely convey title to HCDA, along with **general** authority to coordinate long-range planning and development within certain geographic areas, including the [Kakaako District] (which apparently includes [the Harbor]).

(Emphases in original.) KOA contends that Chapter 266 controls.

We disagree. Chapter 266 provides DOT with general jurisdiction over all state commercial harbors. HRS § 266-1 ("All commercial harbors . . . shall be under the care and control of the [DOT]."). Chapter 206E mandates that HCDA redevelop a specific area, Kakaako District, and it is undisputed that Kakaako District includes the Harbor. HRS §§ 206E-31, 206E-32, and 206E-33. The circuit court did not err by concluding that HRS § 266-1 was the more general and §§ 206E-31, 206E-32, and 206E-33 the more specific set of statutes. COL 13 is not wrong.

### C.    COURT'S RELIANCE ON LEGISLATIVE HISTORY OF ACT 272

### 1.    Plain language of HRS Chapter 266

KOA contends the circuit court erred when it disregarded the plain language of HRS Chapter 266 and instead relied upon the legislative history of Act 272 to conclude that

DOT does not have jurisdiction over the Harbor. As we have already discussed, see Part III.A., when juxtaposed with HRS Chapter 206E, Chapter 266 does not plainly confer authority over the Harbor to DOT.

## 2. No finding of ambiguity

KOA maintains the circuit court erred in referring to legislative history when the court did not find that an ambiguity existed with regard to Chapters 266 and 206E. We disagree. Although the circuit court did not explicitly state that the chapters were ambiguous, the court impliedly found that there was an irreconcilable conflict between Chapters 266 and 206E with regard to whether HCDA or DOT had authority over the Harbor:

> The court has reviewed both sets of provisions in an effort to try and read them together or to seek clarification of whether the legislature intended to give HCDA title to the land underlying [the Habor] but not jurisdiction therefor. The court cannot so conclude[.]

The circuit court then implied that because Chapter 206E contained the more specific provisions, that chapter should be favored and HCDA had authority over the Harbor. "[W]here there is a 'plainly irreconcilable' conflict between a general and a specific statute concerning the same subject matter, the specific will be favored." Batson, 99 Hawai'i at 120, 53 P.3d at 259 (quoting Richardson, 76 Hawai'i at 55, 868 P.2d at 1202).

Given the circuit court's implied finding that there was an irreconcilable conflict between Chapters 266 and 206E, it was not improper for the court to consider legislative history in attempting to ascertain which set of provisions was more specific and, therefore, should be favored.

> [I]mplicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. . . . [W]hen there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. . . . [I]n construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.

Unite Here!, 123 Hawai'i at 170-171, 231 P.3d at 443-44 (quoting Awakuni, 115 Hawai'i at 133, 165 P.3d at 1034). KOA provides no

authority for the notion that the circuit court had to explicitly state that there was an ambiguity, and we find none.

### 3. State Defendants' failure to argue ambiguity

KOA also argues that the circuit court should not have considered legislative history where the State Defendants did not assert that HRS Chapters 266 and 206E were ambiguous. Regardless of what the State Defendants argued in the State's MSJ, the circuit court was free to grant the State's MSJ based on the record in the case. See Sierra Club, 120 Hawai'i at 197, 202 P.3d at 1242 (quoting Dennison, 108 Hawai'i at 384, 120 P.3d at 1119) ("The interpretation of a statute is a question of law which this court reviews de novo.").

### 4. Whether legislative history excludes the Harbor from "commercial harbors"

Alternatively, KOA argues that the circuit court erred in basing its conclusion that DOT does not have authority over the Harbor on legislative history, when the legislative history does not suggest that the Harbor is to be excluded from "commercial harbors." KOA misconstrues the record. The circuit court explicitly stated in COL 11 that "[the Harbor] meets the definition of a commercial harbor." The circuit court referred to legislative history in its COLs to show that although the Harbor is a commercial harbor and DOT has jurisdiction over all commercial harbors pursuant to HRS Chapter 266, the legislature's intention was to give HCDA authority over the Harbor.

### D. HCDA'S PROPOSED RULES

KOA contends the circuit court erred in impliedly concluding that HRS § 206E-4 authorized HCDA to enact rules with regard to the Harbor. KOA argues that HCDA's proposed rules, which would place the Harbor under HCDA's care and control, lack any express statutory basis and would plainly conflict with HRS § 266-1, which places the Harbor under DOT's care and control. KOA cites to Haole v. State, 111 Hawai'i 144, 140 P.3d 377 (2006), to support this argument. Related to this argument is KOA's contention that the following portion of COL 8 is wrong:

"Under HRS § 206E-4, the legislature empowered HCDA to 'make rules with respect to its operations and properties.'"

In Haole, Haole was an employee of McCabe Hamilton Renny & Co., Inc. (McCabe), a company hired by Matson Terminals, Inc. (Matson), a harbor tenant. 111 Hawai'i at 146-47, 140 P.3d at 379-80. Haole was injured while riding as a passenger in an automobile being unloaded at the harbor. Id. at 146, 140 P.3d at 379. Haole filed a complaint against Matson and DOT, which owned and managed the harbor, seeking damages for his injuries. Id. DOT brought a cross-claim against Matson and filed a third-party complaint against McCabe and Eric Rapoza (Rapoza), the driver of the automobile and a McCabe employee. Id.

DOT moved for partial summary judgment against Matson, McCabe, and Rapoza (the appellants) based on the appellants' purported duty to defend the State against Haole's claims, pursuant to Hawai'i Administrative Rules § 19-41-7. 111 Hawai'i at 147, 140 P.3d at 380. Section 19-41-7 imposed upon "[o]wners . . . [or] operators . . . loading or unloading at state wharves" the duty to indemnify and defend the State against losses, claims, demands and suits for damages resulting from their operations. 111 Hawai'i at 150, 140 P.3d at 383. The appellants argued that they had no duty to indemnify and defend the State because DOT's governing statutes did not explicitly authorize DOT to issue administrative rules exonerating the State from negligence of its employees or explicitly allow DOT to require private entities to defend and indemnify the State for its employees' negligence. Id. at 151, 140 P.3d at 384. The appellants added that

> the legislature's imposition of a statutory duty to defend and/or indemnify on other occasions demonstrate[d] the legislature's clear intent to reserve to itself the power to impose upon others a duty to defend and indemnify the State and [did] not consider such authority to be implicitly afforded to State agencies.

Id. The State argued that "although the governing statutes [did] not explicitly authorize the DOT to impose a duty to defend or indemnify, the regulation was nevertheless within the DOT's powers to promulgate." Id. The circuit court granted the

State's motion for summary judgment, and the appellants appealed. Id. at 149, 140 P.3d at 382.

On appeal, the Hawai'i Supreme Court stated that a

public administrative agency possesses only such rule-making authority as is delegated to it by the state legislature and may only exercise this power within the framework of the statute under which it is conferred. Administrative rules and regulations which exceed the scope of the statutory enactment they were devised to implement are invalid and must be struck down.

Stop H-3 Ass'n v. State [Dep't] of Transp., 68 Haw. 154, 161, 706 P.2d 446, 451 (1985) (internal citations omitted); see also Puana v. Sunn, 69 Haw. 187, 189, 737 P.2d 867, 870 (1987) (an agency's authority "is limited to enacting rules which carry out and further the purposes of the legislation and do not enlarge, alter, or restrict the provisions of the act being administered"). In other words,

an administrative agency can only wield powers expressly or implicitly granted to it by statute. However, it is well established that an administrative agency's authority includes those implied powers that are *reasonably necessary to carry out the powers expressly granted*. The reason for implied powers is that, as a practical matter, the legislature cannot foresee all the problems incidental to carrying out the duties and responsibilities of the agency.

Morgan [v. Planning Dep't, County of Kaua'i, 104 Hawai'i 173, 184, 86 P.3d 982, 993 (2004)] (internal quotation marks, brackets, citations, and ellipses omitted) (emphasis added).

Id. at 152, 140 P.3d at 385 (brackets in original omitted; emphasis added). The court examined the relevant statutes:

The relevant governing statutes grant to the DOT all powers necessary for it to regulate and control the state's harbors. However, the grant of the DOT's rule-making authority to carry out its function is specifically defined. First, the power to define the duties of carriers, shippers, and consignees under HRS § 266-3(a)(5) refers to duties respecting passengers, freight, goods, wares, and merchandise in and upon the docks. . . . Nowhere in the governing statutes is there a specific delegation of power to the DOT to define the duties owed by such carriers, shippers, and cosignees to the State as the indemnitee. Second, although the State argues that the power is that which is reasonably necessary and without which the DOT would not be able to fully manage the State harbors, the State admits and . . . all the parties agree that the DOT could require by contract what it does here by regulation. . . . Third, even though HRS § 266-3(a)(5) also authorizes the DOT to enact regulations for the safety of the docks, there is no evidence -- and the State does not even allege -- that imposing liability for the State's negligence upon harbor users contributes to increased safety. Finally, under HRS § 266-3(b)(1), the only other general rule-making provision in that section, the DOT may enact rules necessary to regulate and control all shipping and all other matters and things connected with such shipping. Although broad in scope, the above provision -- like the remaining provisions

> of the relevant governing statutes -- does not explicitly
> state that the DOT's rule-making authority includes the
> power to impose a duty of indemnification.

Id. at 153, 140 P.3d at 386 (internal quotation marks, citations, and emphases omitted).

The supreme court held, inter alia, that DOT's governing statutes did not explicitly or implicitly authorize DOT to issue administrative rules imposing upon private parties "a duty to defend or indemnify the State" and the legislature's imposition of a statutory duty to defend and/or indemnify in other circumstances demonstrated "the legislature's clear intent to reserve such power to itself." Id. at 160, 140 P.3d at 393.

Haole is inapplicable to the instant case because here, HCDA possesses rule-making authority delegated to it by the state legislature. As we have already discussed, HRS § 206E-4(5) confers upon HCDA authority to "[m]ake rules with respect to its projects" and the Harbor is a "project" pursuant to HRS § 206E-2(4). See Part III.A. Under the framework set forth by the legislature, HCDA is given the authority to manage the area that includes the Harbor. HRS §§ 206E-31, 206E-32, and 206E-33. This authority includes the power to adopt rules to govern the Harbor. HRS § 206E-4(5).

The circuit court did not err in impliedly concluding that HRS § 206E-4 authorized HCDA to enact rules with regard to the Harbor, and COL 8 is not wrong.

## E. DOT'S JURISDICTION RESTRICTED BY HRS CHAPTER 206E

KOA contends the circuit court erred in concluding that DOT's jurisdiction and powers are subject to restrictions imposed by HRS Chapter 206E, when HRS § 266-2(b) provides that DOT shall operate and maintain all commercial harbors notwithstanding any law to the contrary and no HCDA statute restricts DOT's authority to operate and maintain the Harbor. In COL 11, the circuit court found that "HRS Chapter 266 makes clear that the powers of the [DOT] are subject to limitations imposed by other statutes." HRS § 266-2(b) provides in relevant part that "[n]otwithstanding any law or provision to the contrary, the [DOT] is authorized to plan, construct, operate, and maintain any commercial harbor

facility in the State." (Emphasis added.) As we have discussed, the circuit court impliedly found that HRS Chapters 266 and 206E concern the same subject matter and irreconcilably conflict regarding whether HCDA has jurisdiction over the Harbor, and Chapter 206E should be favored because it is the more specific set of provisions. See Parts III.A. & B. KOA provides no authority for its assertion that in order for HCDA to have authority over the Harbor, an HCDA statute must specifically restrict DOT's authority, and we find none. The circuit court did not err by concluding that DOT's jurisdiction and powers are subject to restrictions imposed by HRS Chapter 206E, and COL 11 is not wrong.

### F. COURT'S "ABSURD RESULT" FINDING

KOA contends the circuit court erred in concluding that construing the statutes to grant HCDA jurisdiction over the Kakaako District, while maintaining DOT's jurisdiction over the Harbor would lead to an absurd result. In COL 12, the circuit court found that it would be absurd to conclude that "the legislature intended to give HCDA title to the land underlying [the Harbor] but not jurisdiction therefor." "The legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction, and illogicality." State v. Arceo, 84 Hawai'i 1, 19, 928 P.2d 843, 861 (1996) (internal quotation marks, citation, and brackets omitted).

We disagree with KOA and hold that the circuit court's COL 12 is not wrong. As the circuit court stated, the applicable statutes and legislative history reveal the legislature's intent that HCDA "comprehensively and for the long-term plan, renew, and redevelop the Kakaako 'District,' which specifically includes [the Harbor]." Implicit in HCDA's task would be the ability to implement improvements relating to the Harbor.

### G. LAND-BASED JURISDICTION

KOA contends that even if the conflict between HRS Chapters 266 and 206E is not irreconcilable and the statutes are read in pari materia, HCDA has, at best, land-based jurisdiction

over the Harbor's operations, "including streets, utility systems, housing, parks, and any sewer systems" and "DOT maintains operations-based jurisdiction over the Harbor itself (including permits and improvements related to commercial harbor activity)." KOA cites to a 2001 Opinion Letter by a Deputy Attorney General of the State of Hawaii[5] (2001 Letter) to support this argument. In that letter, the Deputy Attorney General stated:

> Here, it does not appear that the Legislature, by passage of Act 86, intended to repeal, in whole or in part, DOT's jurisdiction over commercial harbors. The two statutes are not inconsistent with each other and may be interpreted so that they co-exist. The control and jurisdiction given to HCDA is land based (granted through expansion of physical boundaries) whereas the control and jurisdiction given DOT is function based (commercial harbor). In order for both statutes to coexist and be read consistently, the DOT and HCDA should be viewed as having overlapping jurisdiction over the Kakaako lands that fall within a commercial harbor. Given this interpretation, the DOT may continue to enforce its relevant commercial harbor rules within the Kakaako lands that fall within a commercial harbor.

KOA's reliance on the 2001 Letter is problematic for two reasons. First, in the 2001 Letter, the Deputy Attorney General was responding to the issue of whether DOT could continue to enforce its commercial harbor rules in the Kakaako area. The 2001 Letter does not address whether HCDA could adopt its own rules to govern the Harbor. The evidence on appeal reveals that DOT now has authority over the Harbor, but once HCDA adopts its own administrative rules over the Harbor, HCDA may transfer authority over the Harbor from DOT to itself. In an August 22, 2007 Declaration of Teney K. Takahashi (Takahashi),[6] interim executive director of HCDA, Takahashi stated that although DOT planned to turn over management of the Harbor to HCDA, HCDA was not in a position take over that responsibility at that time. In an August 23, 2007 Declaration of Barry Fukunaga (Fukunaga), DOT's Director of Transportation, Fukunaga stated that DOT was at that

---

[5] KOA attached the letter to its memorandum in opposition to the State's MSJ.

[6] The Declaration was attached to the State Defendants' memorandum in opposition to a motion for preliminary injunction filed by KOA.

time responsible for the management of the Harbor and although DOT planned to turn over management of the Harbor to HCDA, DOT would not do so until HCDA implemented administrative rules regarding the Harbor.

Second, the 2001 Letter is dated May 23, 2001, five years before the legislature enacted Act 165, which returned jurisdiction and administrative control over Piers 1 and 2 from HCDA to DOT. We can infer that if the Deputy Attorney General's "land-based" and "operations-based" distinction was correct, the legislature would not have felt the need to return jurisdiction and administrative control over the piers to DOT.

KOA cites to no other authority for its contention that HCDA has land-based jurisdiction over the Harbor's operations and DOT maintains operations-based jurisdiction over the Harbor itself, and we find none.

### H.    RESULT

The circuit court did not err in granting the State's MSJ because there was no genuine issue of material fact regarding whether HCDA had authority over the Harbor, and the State Defendants were entitled to judgment as a matter of law.

### IV.    CONCLUSION

The Final Judgment as to All Claims and All Parties filed on May 5, 2008 in the Circuit Court of the First Circuit is affirmed.

On the briefs:

Reid A. Nakamura
Kurt K. Leong
(Oliver, Lau, Lawhn, Ogawa
 & Nakamura)
for Plaintiffs-Appellants.

Michael Q.Y. Lau
Sonia Faust
Deputy Attorneys General
for Defendants-Appellees.